UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDUARD SLININ,

                              Plaintiff,

        -v-

ALEX SHNAIDER,

                              Defendant.

No. 15-cv-9674 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Eduard Slinin brings this diversity action against Defendant Alex Shnaider asserting claims under New York law for breach of fiduciary duty, unjust enrichment, and dissolution and an accounting arising out of an alleged partnership between the two parties. Now before the Court is Defendant's motion to dismiss Plaintiff's amended complaint in its entirety and for an award of attorneys' fees.  (Doc. No. 51.)  For the reasons set forth below, the Court grants Defendant's motion to dismiss in part and denies it in part; the Court also denies Defendant's motion for attorneys' fees.

I. BACKGROUND

A.  Facts[1]

Plaintiff and Defendant, who developed a friendly relationship in 2004 due to their shared background as Jewish emigrants from the former Soviet Union, met "at least eight times" in Manhattan between 2006 and 2007 to discuss a potential business partnership.  (Compl. ¶¶ 2, 26–

---

[1] The following facts are taken from the amended complaint (Doc. No. 45 ("Compl.")) and are presumed to be true for the purposes of this motion.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The Court has also considered the arguments raised in Defendant's memorandum of law (Doc. No. 52 ("Mem.")), Plaintiff's opposition (Doc. No. 55 ("Opp'n")), Defendant's reply (Doc. No. 57 ("Reply")), and the supporting documents submitted therewith.

27.)  Specifically, the two men planned to use Defendant's business connections to buy private jets on favorable terms from Bombardier, Inc. and then flip them for profit to Plaintiff's "various contacts, many of whom were successful business people in Ukraine and Russia."  (*Id.* ¶¶ 24–26.) The two men agreed that Plaintiff would be responsible for sales and Defendant would be primarily responsible for paperwork.  (*Id.* ¶ 6.)  Defendant, who had experience in complex commercial transactions, recommended that, for each plane, a prospective buyer should form a foreign-based limited liability company to take ownership of the plane, and that Slinin and Shnaider should also form separate companies – to be operated for the benefit of the partnership – that would contract with Bombardier for the purchase of the aircraft.  (*Id.* ¶¶ 29–31.)  Profits would derive from the difference in both the final and down payments made by the purchasers and the prices Plaintiff and Defendant paid to Bombardier, and would be split evenly between Plaintiff and Defendant. (*Id.* ¶ 32.)  These terms were set orally because Plaintiff felt that no written agreement was necessary "in light of the parties' preexisting relationship."  (*Id.* ¶¶ 34–35.)

Over the next several months, Plaintiff purportedly arranged for the sale of eight Bombardier aircraft (*id.* ¶ 44), though the amended complaint describes only seven transactions (*id.* ¶¶ 46–59).[2]  On five of these contracts with prospective buyers, Plaintiff and Defendant collected down payments and paid a portion to Bombardier, splitting the remaining profit evenly between them.  (*Id.* ¶¶ 48, 52.)  On the sixth contract (the "Blue Skies Contract"), the buyer defaulted on its payments, requiring Plaintiff to pay $2.1 million out of his personal funds to avoid the partnership's default on its contract with Bombardier.  (*Id.* ¶ 53–54.)  Defendant assured Plaintiff that he would be reimbursed, consistent with their partnership agreement.  (*Id.* ¶ 54.)  In

---

[2] The Court notes that Plaintiff's original complaint indicated that, although Slinin and Shnaider procured eight Bombardier contracts, only seven "are at issue in this case."  (Doc. No. 1, Compl. ¶ 34.)  Regardless, the number of contracts is immaterial to the Court's decision on the instant motion.

December 2007, under the seventh contract, Plaintiff himself agreed to purchase an aircraft, and he paid Bombardier a down payment of approximately $1 million out of his personal funds. (*Id.* ¶ 57.)

The partnership ran into trouble in the wake of the 2008 financial crisis. One buyer defaulted on two contracts, requiring the partnership to refund the $5.2 million it had collected in down payments out of fear that the buyer would create legal trouble in Russia. (*Id.* ¶ 61.) That trouble came to pass anyway when the Russian government began a criminal investigation into the partnership, requiring Plaintiff to pay $800,000 of his own funds for legal fees on behalf of the partnership. (*Id.* ¶ 62.) Facing default by buyers on the partnership's remaining contracts, Defendant negotiated with Bombardier to allow the partnership to combine the down payments made thus far, including Plaintiff's personal payment, and put them toward the purchase of two of the seven aircraft. (*Id.* ¶¶ 64–67.) One of these aircraft was sold for a profit in excess of $3 million. (*Id.* ¶ 68.) And while Defendant told Plaintiff that the second aircraft, a Learjet, was sold for a loss, Plaintiff alleges upon information and belief that the Learjet was in fact traded for another aircraft, which was in turn sold for a profit. (*Id.* ¶ 69.) Finally, the plane acquired pursuant to the Blue Skies Contract, on which Plaintiff had paid the down payment after stepping in for the defaulting buyer, was sold for a profit of $4.3 million. (*Id.* ¶ 70.)

According to Plaintiff, Defendant has refused to provide a complete accounting or distribution of the partnership's profits. (*Id.* ¶ 73.) Plaintiff alleges that Defendant promised that his holding company would settle Plaintiff's claims for $500,000, but only if the criminal investigation in Russia closed by June 24, 2012. (*Id.* ¶ 74.) Plaintiff refused and continued to demand a full accounting. (*Id.*) In September 2012, Plaintiff learned that the Russian investigation had been dropped and again reached out to Defendant for his share of the profits. Defendant

refused, claiming the investigation had not been closed and that he owed Plaintiff nothing.  (*Id.* ¶¶ 75–76.)  Plaintiff believes he is owed "in excess of $11 million."  (*Id.* ¶ 77.)

### B.  Procedural History

Plaintiff filed this action on December 10, 2015, seeking damages for breach of fiduciary duty, various breaches of contract, and unjust enrichment, as well as an accounting.  (Doc. No. 1.)  On March 16, 2016, the Court held a conference on Defendant's anticipated motion to dismiss the initial complaint, at which time the Court expressed its concerns with the sufficiency of that pleading.  (Doc. No. 37.)  Plaintiff did not indicate a desire to amend at the conference or at any point over the next six weeks, and Defendant filed his first motion to dismiss on April 29, 2016.  (Doc. No. 41.)  However, on May 13, 2016, Plaintiff filed a letter motion seeking leave to amend his complaint along with a proposed amended complaint, which dropped certain claims, leaving causes of action for breach of contract, unjust enrichment, and a dissolution and accounting.  (Doc. Nos. 45, 46.)  On May 18, 2016, Defendant filed a response, requesting that the Court deny leave to amend because Plaintiff had been on notice of the initial complaint's deficiencies for weeks yet waited to amend until after Defendant had incurred the expense of briefing a motion to dismiss.  (Doc. No. 47.)  On May 27, 2016, the Court granted Plaintiff's motion for leave to file an amended complaint, but permitted Defendant to include in his renewed motion a request for attorneys' fees incurred in connection with the initial briefing.  (Doc. No. 48.)  On June 13, 2016, Defendant filed the instant motion to dismiss the amended complaint, arguing that each of Plaintiff's three claims should be dismissed as time-barred, and that dismissal is also warranted under Rule 19 for nonjoinder of necessary parties and under the *forum non conveniens* doctrine.  Defendant also moves for attorneys' fees pursuant to Rule 11.

Having reviewed the amended complaint and the parties' submissions, the Court finds that Plaintiff's breach of fiduciary duty and unjust enrichment claims are time-barred, that his

accounting claim is not time-barred, and that Rule 19 and the *forum non conveniens* doctrine do not justify dismissal. Accordingly the Court grants Defendant's motion to dismiss in part and denies it in part. The Court also denies Defendant's motion for attorneys' fees.

## II. FAILURE TO STATE A CLAIM DUE TO TIME BAR

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns*, 493 F.3d at 98; *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

Here, Defendant asserts that Plaintiff's claims are time-barred under the applicable statute of limitations. Ordinarily, "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove. However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citation omitted). Defendant

argues that all three of Plaintiff's claims – breach of fiduciary duty, dissolution and accounting, and unjust enrichment – are time-barred.  The Court addresses each in turn.

### A.  Breach of Fiduciary Duty

"New York law does not provide a single statute of limitations for breach of fiduciary duty claims.  Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks."  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) (citation omitted).[3]  "Where the remedy sought is purely monetary in nature, courts construe the suit as alleging 'injury to property' within the meaning of CPLR 214(4), which has a three-year limitations period."  *Id.* (citation omitted).  Here, there is no dispute that Plaintiff seeks monetary relief as redress for the alleged breach of fiduciary duty.  (*See, e.g.*, Compl. ¶ 83 (seeking "damages equal to lost partnership assets and profits, as well as punitive damages").)  Plaintiff nevertheless argues that his fiduciary duty claim is not time-barred because (1) the claim has not yet accrued because an accounting has not occurred, and (2) the claim "sounds in fraud" and is thus subject to a six-year limitations period, which has not run.  Both arguments fail.

As for the first point, the law is clear that a breach of fiduciary duty claim, like most claims, "accrues as soon as 'the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.'"  *IDT*, 12 N.Y.3d at 140 (quoting *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993)).  There can be no dispute that Plaintiff knew of his fiduciary duty claim at least by September 2012, when he demanded that Defendant pay him his share of the profits from the transactions at issue in this litigation, and Defendant refused.  (Compl. ¶¶ 75–76.)  Plaintiff's

---

[3] Where, as here, jurisdiction rests upon diversity of citizenship, "a federal court sitting in New York must apply New York choice-of-law rules and statutes of limitations."  *Stuart v. Am.  Cyanamid Co.*, 158 F.3d 622, 626–27 (2d Cir. 1998).  Moreover, both parties' briefs "assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law."  *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks omitted).

fiduciary duty claim thus accrued no later than September 2012 (more than three years before Plaintiff initiated this action in December 2015).

Plaintiff's argument that his fiduciary duty claim cannot have accrued yet because there has been no accounting is both legally erroneous and illogical. The cases Plaintiff relies on for this proposition simply discuss what methods are available for winding up a partnership after a dissolution. *See, e.g.*, *Kitty Walk Sys., Inc. v. Midnight Pass Inc.*, 431 F. Supp. 2d 306, 311 (E.D.N.Y. 2006) ("New York law provides that the sole method for winding up a partnership or a joint venture is through an accounting to determine the parties' rights."). The cases do not stand for the proposition that partners are prohibited from suing each other until a dissolution and accounting have occurred – indeed, such a rule would conflict with the principle that a partner may bring "an action at law for breach of contract, or an action at law or in equity for breach of fiduciary duty, at some point prior to the dissolution of the partnership," without "'accelerat[ing]' the accrual date for bringing his cause of action for an accounting claim." *Sriraman v. Patel*, 761 F. Supp. 2d 7, 22 (E.D.N.Y. 2011). Moreover, Plaintiff's argument is illogical because he himself is maintaining a suit for breach of fiduciary duty prior to an accounting, and presumably he does not intend to concede that his claim is unripe.

With respect to whether Plaintiff's claim sounds in fraud, the allegations in the amended complaint do not support that contention. It is true that, under New York law, a breach of fiduciary duty claim "sounding in fraud must be commenced within [six] years from the date of the fraudulent act or [two] years from the date the party discovered the fraud or could, with due diligence, have discovered it." *Kaufman v. Cohen*, 307 A.D.2d 113, 122 (1st Dep't 2003); *see also Cusimano v. Schnurr*, 137 A.D.3d 527, 530 (1st Dep't 2016) (same). Here, however, the amended complaint contains no allegations that could support the application of the longer limitations

period.  Tellingly, Plaintiff does not explicitly plead a fraud claim; rather, Plaintiff relies on a post hoc characterization of his allegations in opposition to Defendant's motion to dismiss. Specifically, Plaintiff states in his brief that Defendant told Plaintiff "he would set up . . . contracting companies to operate on behalf of the partnership, but . . . he in fact did not," and that Plaintiff's "fiduciary duty claims therefore sound in fraud."  (Opp'n at 20 (citing Compl. ¶¶ 38, 39).)  But the cited paragraphs of the amended complaint in fact allege that Defendant *did* "set up" contracting companies (Compl. ¶ 38; *see also id.* at p. 4 ("Shnaider and Slinin [o]perate[d] the [p]artnership as [p]lanned" (capitalization removed)), and Plaintiff simply claims that he did not receive his share of the profits when he demanded it (*id.* ¶¶ 73–76).  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[a] party may not amend [his] pleading through statements in briefs").  These allegations do not state a claim for fraud, which requires "a representation of fact, which [was] either untrue and known to be untrue or recklessly made, and which [was] offered to deceive the other party and to induce them to act upon it, causing injury."  *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992).

Moreover, even if the amended complaint could be construed to include a fraud claim, its allegations would still fall well short of the pleading requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires a plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402–03 (2d Cir. 2015).  In addition, matters alleged "on information and belief" must be "accompanied by a statement of the facts upon which the belief is based."  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004).  None of Plaintiff's "fraud" allegations meet these standards.  For example, the amended

complaint alleges that Defendant "has fraudulently attempted to conceal the assets and profits of the partnership" (Compl. ¶ 10) – a conclusory statement that would not pass muster even under the more forgiving Rule 8(a)(2) standard, *see Iqbal*, 556 U.S. at 678–79.  In the only other instance where the amended complaint purports to plead fraud, Plaintiff alleges that, "[a]lthough [Defendant] told [Plaintiff] that the Learjet was sold for a loss, upon information and belief, the Learjet was in fact traded for a Global XRS, which was in turn sold for a profit."  (Compl. ¶ 69; *see also id.* ¶ 82 (alleging that Defendant "attempted to conceal the violation of his fiduciary duties by misrepresenting to [Plaintiff] the disposition of the Learjet").)  But that allegation fails to plead "where and when" Defendant made this statement, *Fin. Guar. Ins.*, 783 F.3d at 403, "why" the statement was fraudulent, *id.*, or "the facts upon which [Plaintiff's] belief is based," *First Capital Asset Mgmt.*, 385 F.3d at 179.  Because none of Plaintiff's allegations meet Rule 9(b)'s pleading requirements for fraud, the Court will not apply a six-year statute of limitations.

Turning to the application of the three-year limitations period, as indicated above, Plaintiff's fiduciary duty claim accrued no later than September 2012, when he demanded his share of the alleged partnership profits from Defendant.  (Compl. ¶¶ 73–75.)  Plaintiff was therefore required to initiate this action by September 2015, and since Plaintiff did not file until December 2015, his breach of fiduciary duty claim is time-barred.[4]

### B.  Unjust Enrichment

An unjust enrichment claim typically is "governed by a six-year statute of limitations under New York's residual limitations period statute."  *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 667 (S.D.N.Y. 2007) (citing N.Y. C.P.L.R. § 213(1)).  "However, if the unjust enrichment claim

---

[4] Based on Plaintiff's allegation that Defendant offered to settle Plaintiff's claims for an accounting and distribution of partnership profits in June 2012 (Compl. ¶ 73), Plaintiff was arguably aware of his breach of fiduciary claims even earlier, but the difference is immaterial for purposes of the instant motion.

is merely incidental to or duplicative of another claim with a shorter limitations period, the Court will not allow a plaintiff to avail himself of the longer limitations period." *Id.*; *see also Kapernekas v. Brandhort*, 638 F. Supp. 2d. 426, 428–29 (S.D.N.Y. 2009) (dismissing plaintiff's unjust enrichment claim where the remedy for other claims was adequate and a time bar would preclude relief for those claims).   Here, Plaintiff alleges that Defendant "will be unjustly enriched if permitted to retain the full profits resulting from" the parties' partnership.   (Compl. ¶ 90.) However, the facts alleged in the amended complaint mirror those in *Malmsteen*.   In that case, the plaintiff claimed that the fiduciary defendant was "unjustly enriched by paying himself excessive fees from plaintiff's income."   477 F. Supp. 2d at 667.   Nevertheless, Judge Holwell concluded that, because defendant's conduct occurred "solely on account of his fiduciary relationship with plaintiff," the unjust enrichment claim was, "in essence, for damages based on a breach of fiduciary duty," and applied the three-year limitations period.   *Malmsteen*, 477 F. Supp. 2d at 667–68.   The Court finds that the same result is warranted here.   Accordingly, Plaintiff's unjust enrichment claim – which accrued at the same time as his fiduciary duty claim and is subject to the same three-year limitations period – is time-barred.

## C.  Dissolution and an Accounting

Pursuant to Section 74 of the New York Partnership law, a partner's "right to an account of his interest . . . accrue[s] . . . as against the winding up partners . . . at the date of dissolution, in the absence of agreement to the contrary."   N.Y. P'Ship Law § 74; *see also Scholastic, Inc. v. Harris*, 259 F.3d 73, 90 (2d Cir. 2001) ("New York law provides that partners are entitled to an accounting of a partnership following its dissolution.").   A partnership is dissolved "[b]y the express will of any partner," N.Y. P'ship Law § 62, and "dissolution occurs when either party manifests 'an unequivocal election' to cease the collaboration."   *Scholastic*, 259 F.3d at 87 (citing *Cracco v. Cracco*, 25 A.D.2d 660, 660 (2d Dep't 1966)).   The *Cracco* case cited by the Second

Circuit is instructive here.  In that case, defendants' "refus[al] to continue to pay plaintiff . . . his share in the proceeds of the partnership" and their "refus[al] to account to plaintiff as provided in the partnership agreement manifested an unequivocal election by defendants to dissolve the partnership at will."  *Cracco*, 25 A.D.2d at 660.

Here, Plaintiff similarly alleges that, after he demanded a "full accounting" from Defendant in June 2012 (Compl. ¶ 74) and reached out to Defendant again in September 2012 seeking "the funds he was due under the partnership agreement" (*id.* ¶ 75), Defendant "refused" and stated that he "owed [Plaintiff] nothing" (*id.* ¶ 76).  Thus, based on the amended complaint's allegations, which must be taken as true at this stage, Defendant's actions "manifest[ed] 'an unequivocal election' to cease the collaboration" no earlier than June 2012, thereby dissolving the partnership at that time, *Scholastic*, 259 F.3d at 87, and giving rise to Plaintiff's right to an accounting, N.Y. P'Ship Law § 74.[5]

"A cause of action for an accounting accrues upon dissolution of the partnership and must be commenced within six years of dissolution."  *6D Farm Corp. v. Carr*, 63 A.D.3d 903, 906 (2d Dep't 2009) (citations omitted); *see also Brooks v. Haidt*, 59 A.D.3d 233, 234 (1st Dep't 2009) (same); *Mashihi v. 166-25 Hillside Partners*, 51 A.D.3d 738, 739 (2d Dep't 2008) (same); *Eskenazi v. Schapiro*, 27 A.D.3d 312, 315 (1st Dep't 2006) (same).  Based on Plaintiff's allegations, his right to an accounting upon dissolution accrued no earlier than June 2012; accordingly, his claim for an accounting filed in December 2015 is timely.

---

[5] Defendant's suggestion that the partnership may have dissolved even earlier because "there is no allegation that either partner attempted to carry on the business of the alleged partnership after . . . the 2008 financial crisis" (Mem. at 9) is simply not supported by the amended complaint's allegations or reasonable inferences drawn from those allegations in Plaintiff's favor.  Accordingly, the Court rejects that contention at this stage of the proceeding.

Defendant argues that a shorter, three-year limitations period should apply, but he relies on inapposite case law.  (*See* Mem. at 8.)  It is true that New York courts have held that, where a plaintiff "primarily seek[s] damages" for breach of fiduciary duty and "pursue[s] an accounting merely to determine the amount of such damages," a "three-year limitations period" applies. *Carlingford Ctr. Point Assocs. v. MR Realty Assocs., L.P.*, 4 A.D.3d 179, 180 (1st Dep't 2004); *see also Stearns v. Kenny & Stearns*, 136 A.D.3d 439, 439 (1st Dep't 2016) (three-year limitations period applied where plaintiff withdrew from law firm and asserted accounting claim "based on a breach of fiduciary duty" and sought "only monetary damages").  Here, however, Plaintiff has not asserted an accounting claim "merely to determine . . . damages" resulting from a breach of fiduciary duty; rather, Plaintiff seeks an accounting upon dissolution of the alleged partnership – the existence of which Defendant has not challenged in its motion.  New York Partnership Law § 74 clearly entitles Plaintiff to such an accounting, and the case law makes clear that a six-year limitations period applies to an accounting claim that accrues upon dissolution.  *See 6D Farm*, 63 A.D.3d at 906; *Brooks*, 59 A.D.3d at 234; *Mashihi*, 51 A.D.3d at 739; *Eskenazi*, 27 A.D.3d at 315. Thus, under the applicable six-year limitations period, Plaintiff's accounting claim is not untimely.

### III.  FAILURE TO JOIN NECESSARY PARTIES

Defendant also seeks dismissal pursuant to Rule 12(b)(7) for failure to join a party under Rule 19.  "In determining whether an action should be dismissed for nonjoinder, the [C]ourt . . . . must initially determine whether the party should be joined as a 'necessary party' under Rule 19(a)." *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681 (2d Cir.1996). A person may be "necessary" under Rule 19(a) if (1) "in that person's absence, the court cannot accord complete relief among existing parties," or (2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence" may "as a practical matter impair or impede the person's ability to protect the interest" or "leave

an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

If a "necessary" party is not subject to service of process or would, if joined, deprive the Court of subject-matter jurisdiction, the Court must turn to Rule 19(b), which "requires courts to consider whether, 'in equity and good conscience,' the party is one without whom the action between the remaining parties cannot proceed – or, in the traditional terminology, whether the absent party is 'indispensable.'" *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015) (quoting Fed. R. Civ. P. 19(b)). "'Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result.'" *Id.* (quoting 7 Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1609 (3d ed. 2015)).

Here, the Court finds Defendant's nonjoinder argument to be without merit, since it turns on a mischaracterization of the pleadings. Specifically, Defendant contends that the amended complaint requires the adjudication of the contractual rights of all of the entities that were counterparties in the various airplane transactions. (*See* Mem. at 11–12 (arguing that the amended complaint "is predicated entirely upon a series of contracts" with non-parties, which will require "a judicial determination that one or more of those contracts was somehow improperly performed").) On that basis, Defendant argues that all of those single-purpose corporate entities, and Bombardier, are necessary parties to this action. But this case is nothing more than a partnership dispute; the Court will be asked to determine the rights of the parties, as between Slinin and Shnaider, with respect to any profits earned by the alleged partnership. Defendant's argument, if accepted, would require – in virtually any partnership accounting action – joinder of the partnership's contractual counterparties. Defendant tellingly offers no authority for this

13

proposition.  Accordingly, the Court denies Defendant's motion for dismissal pursuant to Rule 12(b)(7).

## IV. DISMISSAL FOR *FORUM NON CONVENIENS*

Defendant also argues that dismissal is warranted on *forum non conveniens* grounds because Defendant and some of the alleged partnership's contractual counterparties are located in Canada and because the partnership's contracts with these counterparties were to be performed in Canada under Canadian law.  (*See* Mem. at 17–18.)  The Second Circuit has articulated a "three-step process" to guide courts in determining whether to dismiss a complaint under the *forum non conveniens* doctrine.  *Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001)).  "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendant[] is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum."  *Id.* (citation omitted).  A defendant "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."  *Sinochem Int'l v. Malaysia Int'l Shipping*, 549 U.S. 422, 430 (2007); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (unless the relevant factors balance "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").

With respect to step one, Plaintiff here has sued in his home forum (Compl. ¶ 14), a choice that is "generally entitled to great deference because it is presumed to be convenient."  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) (citation omitted).  In addition, Defendant has not shown that Plaintiff's choice of forum was motivated by "forum-shopping" or other "tactical" reasons, and thus Plaintiff's choice of a forum convenient to him is owed even greater weight.  *See Iragorri*, 274 F.3d at 73–74.  Indeed, Defendant's argument focuses

almost exclusively on the adequacy of an alternative forum, without addressing step one.  (*See* Mem. at 17–18.)  Thus, the Court concludes that Plaintiff's choice of forum is entitled to significant weight.

As for the remaining two steps – adequacy of an alternative forum and public and private interests implicated by the chosen forum – the Court likewise finds no basis for dismissal.  While Defendant argues that Canada is an adequate alternative, it is not clear why that is so other than that Defendant is a Canadian resident and citizen.  (Compl. ¶ 15.)  Defendant asserts that some entities that dealt with the alleged partnership also reside in Canada and that the contracts with those entities are located in Canada and are governed by Canadian law.  (Mem. at 18.)  But as noted above, this action centers on a dispute regarding a New York partnership, formed during meetings that took place in New York, and whether Defendant retained profits that should have been disbursed to Plaintiff – not a contractual dispute with Canadian or other entities with which the partnership allegedly dealt.  Defendant utterly ignores these considerations.  Accordingly, because Defendant has not identified any factors that tip strongly in favor of its proposed alternative forum – even assuming Canada is adequate – the Court finds that this is not one of the "rare[]" cases in which "the plaintiff's choice of forum should . . . be disturbed."  *Gulf Oil*, 330 U.S. at 508.

## V. ATTORNEYS' FEES

Defendant also seeks attorneys' fees pursuant to Federal Rule of Civil Procedure 11(c), on the basis that Plaintiff needlessly increased the cost of litigation by waiting to amend his complaint until after Defendant filed his first motion to dismiss, notwithstanding the fact that Plaintiff had the opportunity to amend between the March 16, 2016 pre-motion conference, at which Defendant's anticipated motion was discussed, and the filing of that motion on April 29, 2016. (Mem. at 18–20.)  Rule 11(c) permits the Court to sanction a party whose court filings "cause

unnecessary delay" or "needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b), (c). While Plaintiff no doubt wasted Defendant's time by waiting to amend his complaint, the Court also recognizes that the Second Circuit's decision in *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015), appears to embrace the notion that a plaintiff is entitled to review a "fully briefed" dispositive motion – or even a ruling on such a motion – before deciding whether to exercise his right to amend under Rule 15(a)(1), *see id.* at 190. The Court also notes that the amendments to Plaintiff's complaint were not frivolous; on the contrary, they may have saved his accounting claim from dismissal. In light of these considerations, the Court declines to award Defendant attorneys' fees at this time.

## VI. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendant's motion to dismiss is granted in part and denied in part, and Defendant's motion to award attorney's fees is denied. IT IS FURTHER ORDERED THAT, by February 6, 2017, the parties shall submit a revised proposed case management plan and scheduling order. A template for the order is available at: http://www.nysd.uscourts.gov/judge/Sullivan. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 51.

SO ORDERED.

Dated:      February 2, 2017
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/2/17