IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Eduard Slinin,

                Plaintiff,                    1:15-cv-09674 (RJS)

   - Against –

Alex Shnaider,

                Defendant.

## DEFENDANT ALEX SHNAIDER'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

Defendant Alex Shnaider respectfully submits this Statement of Material Facts pursuant to Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York. There is no genuine issue to be tried on the following material facts:

### The Parties Reached an Understanding Regarding the Sale of Aircraft

1. Plaintiff Eduard Slinin ("Plaintiff" or "Slinin") and Defendant Alex Shnaider ("Defendant" or "Shnaider") reached an understanding to sell Bombardier aircraft to third party purchasers. Declaration of Karen Dyer ("Dyer Decl"), Ex. A at 14:4-7, Ex. C at 58:7-13.

2. Slinin and Shnaider reached this understanding in 2007. Dyer Decl. Ex. A at 105:16-23.

3. According to their understanding, Slinin's only role was to find persons interested in buying aircraft. Dyer Decl. Ex. A at 134:23-135:6, Ex. C at 57:17-25.

4.     Slinin found two buyers: Georgiy Pirumov and Oleg Sheikametov. Dyer Decl. Ex. A at 137:13-20.

5.     As a long-term customer of Bombardier, Shnaider was able to get preferential pricing from Bombardier for aircraft that he was purchasing. Dyer Decl. Ex. C at 53:24-54:4; Ex. A at 123:21-124:6.

6.     At the time that Slinin and Shnaider came to their understanding, Bombardier aircraft cost more in Russia than in North America. Dyer Decl. Ex. A at 124:21-125:5; Dyer Decl. Ex. C at 51:13-21.

7.     Shnaider established three limited liability companies, Challenger Aircraft Company Ltd. ("CAC"), CL 850 Aircraft Investments, Ltd. ("CL850AI"), and CL 850 Aviation Holdings, Ltd. ("CL850AH")(collectively, the "Limited Liability Companies"), to buy aircraft from Bombardier and sell to purchasers found by Slinin. Dyer Decl. Ex. A at 136:13-19, Ex. C at 76:20-77:14, Ex. D at 17:22-22:3.

8.     The Limited Liability Companies were wholly owned by Midland Resources Holding Ltd. ("Midland") and Alex Shnaider was the ultimate beneficial owner of those companies. Dyer Decl. Ex. D at 17:19-22:3, 25:16-19; Dkt. 30 at 2-3; Dkt. 31 at 2-3; Lee Decl. ¶ 5-8.

9.     Slinin did not have any ownership interest in the Limited Liability Companies. Dyer Decl. Ex. D at 26:2-20, Ex. E at 78:11-81:15; Dkt. 30 at 2-3; Dkt. 31 at 2-3; Lee Decl. ¶ 5-8.

10.    The Limited Liability Companies were specifically created in order to use the corporate form to limit liability. Dyer Decl. Ex. D at 24:4-12.

11. Slinin was not an officer, director, agent, or employee of the Limited Liability Companies. Dyer Decl. Ex. F (Pl. Reply to Defendant's Requests for Admission ("Pl. Reply to RFA") No. 36 and 38); Ex. A at 144:2-6.

12. Shnaider bought several companies for aircraft buyers to use in purchasing aircraft. Dyer Decl. Ex. D at 30:15-19, 33:10-35:14.

13. Shnaider transferred the shares of the companies to the aircraft purchasers. Dyer Decl. Ex. D at 55:7-10.

14. Slinin had no other role than to find buyers for the aircraft. Slinin did not have any role in (1) creating the companies used by the buyers to purchase the aircraft, (2) drafting the aircraft purchase agreements, (3) supervising the legal aspects of the business, (4) managing the books and records of the business, or (5) preparing any tax filings for the business. Dyer Decl. Ex. A at 42:25-43:12, 101:24-102:12, 104:13-20.

15. In general, Slinin followed whatever instructions Shnaider gave him. Dyer Decl. Ex. A at 52:24-53:11, 114:19-24.

16. Shnaider controlled the Limited Liability Companies. Dyer Decl. Ex. D at 178:24-180:2, Ex. J.

### The Purchasers Found by Slinin Contracted to Purchase Seven Aircraft

17. Mr. Pirumov and Mr. Sheikhametov contracted with CAC for the purchase of seven Bombardier aircraft. Dyer Decl. Ex. A at 137:18-138:3, Ex. D at 61:21-62:18, Ex. C at 102:8-24.

18. For each contract with a purchaser, there was a corresponding contract with Bombardier. Dyer Decl. Ex. C at 107:10-108:8.

19. Slinin did not execute any of the contracts with the purchasing companies. Nor did he execute any of the corresponding contracts with Bombardier. The contracts were all executed by Rob Lee, Chief Financial Officer of Midland, or by Daniel Tillis, another Midland employee. Dyer Decl. Ex. D at 27:17-28:17, 48:20-49:14.

20. In the contracts with Bombardier, the Limited Liability Companies were responsible for paying the liquidated damages in case of default. Dyer Decl. Ex. C at 115: 22-117:8.

21. According to their understanding, Slinin and Shnaider intended that they would each receive a portion the difference between the amounts paid by the purchasers and the price required by the contracts with Bombardier. Dyer Decl. Ex. C at 79:6-83:20, 95:20-96:7, 97:15-98:13; Ex. A at 14:7-10.

22. In at least some instances, Slinin received the initial deposits from the purchasers, transferred the payments to Bombardier, and the distributed a portion of the difference to Alex Shnaider. Dyer Decl. Ex. A at 140:16-21.

23. The purchasers refused to go forward with their contracts, and at the time, the purchasers had only paid the initial deposits. Dyer Decl. Ex. C at 79:6-83:20, 103:9-104:3, Ex. A at14:2-24.

### Slinin and Shnaider Separately Entered Contracts for Learjet 60 Aircraft

24. Slinin used a company called KSR Jet, Inc. to enter a contract for a Learjet 60. Slinin was the sole owner of KSR Jet, Inc. This contract can be referred to as "Contract 207." Dyer Decl. Ex. B at 232:2-25.

25. Midland separately entered into a contract with Learjet for a Learjet 60. This contract can be referred to as "Contract 206." Dyer Decl. Ex. D at 125:14-20.

26. Slinin does not have any ownership interest in Midland. Dyer Decl. Ex. A at 146:18-23.

### If the Purchasers Did Not Perform on the Contracts, Shnaider Would Be Liable for Liquidated Damages to Bombardier

27. In 2008, Slinin informed Shnaider that the purchasers were not going to perform on their contracts with CAC. Dyer Decl. Ex. C at 103:9-104:2.

28. CAC or CL 850 would have been responsible for paying the liquidated damages on the corresponding contracts with Bombardier. Dyer Decl. Ex. C at 115:22-116:3.

29. Shnaider, as the ultimate beneficial owner of CAC and CL 850, would have needed to provide additional funding to CAC and CL 850 in order to pay the liquidated damages under the Bombardier contracts. Dyer Decl. Ex. C at 108:9-17, 116:7-117:8.

30. Slinin purchased one contract from Pirumov. Slinin accomplished this by buying from Pirumov all the shares in the company that Pirumov used in the contract with CAC. This company was called Blue Industrial Skies, and the contract was Contract 169. Dyer Decl. Ex. B at 196:11-197:18; Dyer Decl. Ex. C at 150:2-22.

31. On behalf of Blue Industrial Skies, Slinin then executed a settlement agreement with CAC that terminated the contract with Blue Industrial Skies. The settlement agreement did not require CAC to return any money to Blue Industrial Skies. Dyer Decl. Ex. B at 198:2-199:15, 201:2-203:5.

32. The settlement agreement left CAC free to find another buyer, and in fact, Alex Shnaider found another buyer for this contract. This buyer paid Slinin $2 million under the contract between the buyer and CAC. The new buyer also ultimately defaulted and forfeited this $2 million deposit. Dyer Decl. Ex. D at 150:24-153:4.

33. Slinin would later pledge any right he had in Contract 169 between CAC and Blue Industrial Skies as collateral for a promissory note between Midland Resources Holding and All City Funding, LLC, a company owned by Slinin. Dyer Decl. Ex. G.

34. Shnaider reached out to Bombardier to try to negotiate a solution and avoid paying liquidated damages. Dyer Decl. Ex. C at 118:16-24.

### **Slinin Agreed to the Promissory Note**

35. Sheikhametov, through two "off the shelf" companies, contracted to purchase planes under contracts 161 and 162 with CAC. Dkt. 32 at 12-30.

36. Sheikhametov eventually decided to not proceed with the contracts. Shnaider Tr. 103:9-19.

37. Slinin wanted to refund Sheikhametov's deposits to him despite understanding that the deposits were subject to the liquidated damages clause, and refunding the deposits was unnecessary. Shnaider Tr. 155:10-156:2; Slinin Tr. 137:25-138:11, 162:20-21.

38. Shnaider did not want to refund Sheikhametov's deposits. Shnaider Tr. 156:4-158-5; Slinin Tr. 154:12-155:5; 162:6-163:15.

39. Shnaider agreed to lend Slinin the funds to refund Sheikhametov's deposits on condition that Slinin was responsible for repaying the money to Shnaider. Slinin Tr. 154:17-155:5; Shnaider Tr. 156:17-157:15.

40. Slinin and Shnaider understood that the promissory note would be repaid through either termination of contracts 161 and 162 with Bombardier or the sale of the aircraft constructed pursuant to those contracts. Slinin Tr. 155:10-156:10; Shnaider Tr. 156:17-157:15

41. Slinin signed the promissory note and personal guarantee. Slinin Tr. 154:17-155:5; Shnaider Tr. 156:17-159:9.

42. As part of the promissory note, Slinin agreed to give up whatever interest he had in Contract 169 and Contract 207. Dyer Decl. Ex. G.

43. Neither Slinin nor All City Funding made any payments of principal or interest under the promissory note. Dyer Decl. Ex. F (Pl. Reply to RFA No. 40-41).

## Shnaider Worked with Bombardier to Renegotiate the Several Deposits and Sell Two Aircraft

44. Shnaider negotiated with Bombardier to reach a settlement and receive some benefit out of the deposits on contracts 161 and 162. Dyer Decl. Ex. C at 158:6-159:9.

45. Shnaider also negotiated that several other contracts between Midland and Bombardier would be terminated and the deposits distributed to pay for either Contract 161 or Contract 206. Dyer Decl. Ex. D at 130:16-131:14, Ex. K.

46. Slinin agreed to terminate Contract 207 and to allow Midland to apply the deposit to Contract 206. Dyer Decl. Ex. D at 125:6-23.

## There Are No Documents Establishing the Existence of the Partnership or the Parties' Intent to be Partners.

47. Neither Slinin nor Shnaider established bank accounts for the alleged partnership. Rather, Slinin maintains that his bank accounts or Shnaider's bank accounts, separately, may be considered accounts of the alleged partnership. Dyer Decl. Ex. F (Pl. Reply to RFA No. 5-6), Ex. A at 143:21-25.

48. The alleged partnership did not file any tax returns with the federal, state, or local governments. Dyer Decl. Ex. F (Pl. Reply to RFA No. 7-8).

49. The alleged partnership did not have a name. Dyer Decl. Ex. F (Pl. Reply to RFA No. 9-10).

7

50. No certificate of partnership was filed as required by General Business Law § 130. Dyer Decl. Ex. F (Pl. Reply to RFA No. 11-13), Ex. A at 100:10-17.

51. Slinin did not execute any contracts on behalf of the alleged partnership. Dyer Decl. Ex. F (Pl. Reply to RFA No. 33).

52. Slinin did not have the authority to execute any contracts on behalf of CAC or CL 850, because he was not an officer, director, agent, or employee of CAC or CL 850. Dyer Decl. Ex. F (Pl. Reply to RFA No. 36, 38), Ex. A at 144:2-6.

53. When Slinin and Shnaider reached their understanding, Slinin did not make any capital contributions to the business, because the contracts with Bombardier were to be paid with money received from the purchasers. Dyer Decl. Ex. C at 95:20-98:13.

Date: November 16, 2017

Respectfully submitted,

s/Karen C. Dyer

Nicholas A. Gravante, Jr.
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
ngravante@bsfllp.com

Karen C. Dyer
George R. Coe
BOIES, SCHILLER & FLEXNER LLP
121 S. Orange Avenue, Suite 840
Orlando, Florida 32801
Tel: (407) 425-7118
Fax: (407) 425-7047
kdyer@bsfllp.com
gcoe@bsfllp.com

*Attorneys for Defendant Alex Shnaider*