# Exhibit G

DEC-26-2008 18:31
DEC-26-2008 18:09
P.001
P.001



# PROMISSORY NOTE

Dated: December 29, 2008

$4,450,000

For value received, All City Funding LLC, a New York limited liability company, with an address c/o Eduard Slinin, 42 Dora Lane, Holmdel NJ 07733, USA (the "Borrower") promises to pay to the order of Midland Resources Holding Limited, company organized under the law of Guernsey having registered number 033664 (the "Lender") at the Lender's offices at Havelet House, 181 South Esplanade, St. Peter Port, Guernsey, Channel Islands GY1 3JS or to such other place the Lender may direct, in lawful money of the United States, the original principal sum of FOUR MILLION FOUR HUNDRED FIFTY THOUSAND DOLLARS ($4,450,000) (the "Principal Sum"), and interest on the unpaid portion of the Principal Sum in the manner hereafter set forth.

Obligations Evidenced by this Note. This Note evidences and the Principal Sum is comprised of (a) an advance being made by the Lender to the Borrower in the amount of U.S. $4,000,000 on the date of this Note (the "Advance Principal Sum") and (b) an existing obligation of the Borrower to the Lender in the amount of U.S. $450,000 (the "Existing Obligation Principal Sum").

Application of Payments Received. Except as otherwise specifically provided in this Note, before maturity of the Principal Sum, whether by acceleration or otherwise, all payments on this Note shall be applied by the Lender (a) first to reduce the Existing Obligation Principal Sum, (b) second, to any accrued and unpaid interest on the Advance Principal Sum, and (c) third to reduce the Advance Principal Sum. After maturity of the Principal Sum, whether by acceleration or otherwise, any payments received or other amounts collected by the Lender shall be applied to the outstanding Principal Sum, interest and other amounts payable to the Lender under this Note, in such manner and order as the Lender shall determine in its absolute and sole discretion.

Interest Payable on Advance Principal Sum. The Borrower shall pay to the Lender interest, calculated on the basis of a 365-day year, on the outstanding Advance Principal Sum from and including the date of this Note to but not including the date such outstanding Advance Principal Sum is paid in full at a rate per year that (1) on each day beginning before the maturity, whether by acceleration or otherwise of such outstanding Advance Principal Sum, shall be 12.0% and (2) on each subsequent day shall be 15%.

Interest Payable on Existing Obligation Principal Sum. The outstanding Existing Obligation Principal Sum shall not bear interest before maturity, whether by acceleration or otherwise, of the outstanding Existing Obligation Principal Sum. On each day on or after maturity, whether by acceleration or otherwise, of the outstanding Existing Obligation Principal Sum, until the Existing Obligation Principal Sum is paid in full, the Borrower shall pay to the Lender interest on the outstanding Existing Obligation Principal Sum calculated on the basis of a 365-day year at a rate per year that shall be 15%.

CONFIDENTIAL

AS0006517

- 2 -

Limitation on Interest Rate. In no event shall interest be payable on this Note at a rate in excess of the maximum rate permitted by applicable law, and solely to the extent necessary to result in such interest not being payable at a rate in excess of such maximum rate, any amount that would be treated as part of such interest under a final judicial interpretation of applicable law shall be deemed to have been a mistake and automatically canceled, and, if received by the Lender, shall be refunded to the Borrower, it being the intention of Lender and of the Borrower that such interest not be payable at a rate in excess of such maximum rate.

Maturity Date. Subject to the obligation of the Borrower to make earlier mandatory prepayments as hereafter set forth, the Borrower promises to pay the Principal Sum and all interest accrued and unpaid pursuant to this Note to the Lender on December 29, 2011.

Mandatory Prepayments. The Borrower shall make a mandatory prepayment of this Note as and when, and each time, there exists any Net Proceeds in the full amount of such Net Proceeds. "Net Proceeds" means the amount of any cash proceeds received from time to time by the Borrower or any Borrower Entity arising from the sale of any Aircraft Interest after deduction for the costs of sale, satisfaction of any security interest in or other lien on such Aircraft Interest and the payment of any sales or similar taxes payable with respect to such sale. "Aircraft Interest" means any ownership or other interest in any aircraft, or any contract for purchase or manufacture of any aircraft. "Borrower Entity" means any entity directly or indirectly owned by or under the direct or indirect control of the Borrower or Eduard Slinin (the "Guarantor").

Payment from Contract Disposition Proceeds. It is contemplated the Lender will obtain from CL 850 Aviation Holdings Limited (a Borrower Entity) an interest in two contracts between CL 850 Aviation Holdings Limited, as purchaser, and Bombardier Inc., as seller, each covering a Challenger 850 aircraft currently under construction (Bombardier Contract Reference Nos. C850 0161 and C850 0162). The Lender thereafter plans to liquidate its interest under each such contract by either selling its rights under such contract or by making arrangements with Bombardier Inc. for the termination of such contract (collectively, with respect to both such contracts, the "Contract Disposition"), and expects to receive approximately $4,000,000 from the Contract Disposition (but the Lender makes no representation, warranty or guaranty in regards to the amount to be received from the Contract Disposition). In consideration of the transfer of an interest in such contracts by CL 850 Aviation Holdings Limited to the Lender, the Lender agrees to apply to the unpaid balance of the Advance Principal Sum and any accrued and unpaid interest thereon, in such order as the Lender shall determine, the net amount (after deduction of any sales or similar taxes relating to, and any costs of completing, the Contract Disposition), of (a) any cash proceeds received by the Lender from any Contract Disposition, as and when received the Lender, and (b) any credit given by Bombardier Inc., as consideration for any Contract Disposition, in reduction of the obligations of the Lender or any affiliate of the Lender under any other transaction between the Lender or any such affiliate and Bombardier Inc, but only as and when any such credit is applied by Bombardier Inc. to such other obligations. Any net proceeds by the Lender from the Contract Disposition in excess of the outstanding Advance Principal Sum and any accrued and unpaid interest thereon shall be retained by the Lender and

CONFIDENTIAL

AS0006518

- 3 -

the Lender shall have no obligation to apply any such proceeds to any amount payable under this Note or otherwise payable by the Borrower to the Lender. By accepting this Note, the Lender agrees to apply any net proceeds of the Contract Disposition received by the Lender in accordance with the provisions of this paragraph.

*Prepayments.* The Borrower shall have the option of paying the Principal Sum to the Lender in advance in full or in part at any time and from time to time without premium or penalty; provided, however, that together with such payment in full the Borrower shall pay to the Lender all interest and all other amounts owing pursuant to this Note and remaining unpaid.

*Covenants.* The Borrower covenants that it shall furnish or cause to be furnished to the Lender:

(a) by email to rob.lee@midland.gg, no less frequently than once every two week period, regular written reports, in form and content satisfactory to the Lender, on the status of sales by the Borrower and each Borrower Entity of any Aircraft Interests, the amount of any proceeds and Net Proceeds generated by such sales; and

(b) as soon as practicable, but in any event, no later than January 20, 2009, as security for the obligations of the Borrower under this Note, a collateral assignment, in form and content satisfactory to the Lender, free and clear of all liens and encumbrances, executed by each purchaser and consented to by Bombardier Inc., of all right, title and interest of such purchaser under the following described contracts:

(i) aircraft purchase agreement for one Bombardier Challenger 850 executive aircraft, Bombardier Inc. contract reference C850-0169, and

(ii) aircraft purchase agreement for one Lear 60 executive aircraft, Learjet Inc. Bombardier Inc. contract reference L60-0207.

*Events of Default and Acceleration.* Upon and at any time and from time to time after the occurrence or existence of any Event of Default other than an Event of Default described in clause (3) of this paragraph, all amounts owing pursuant to this Note shall, at the sole option of the Lender and without any notice, demand, presentment or protest of any kind (each of which is waived by the Borrower), become immediately due. Upon the occurrence or existence of any event or condition described in such clause (3), such amounts shall, without any notice, demand, presentment or protest of any kind (each of which is waived by the Borrower), automatically become immediately due. An "Event of Default" occurs or exists if (1) the Borrower defaults in the payment when due, whether by acceleration or otherwise, of any amount owing pursuant to this Note; (2) the Borrower, the Guarantor or any Borrower Entity sells, assigns or otherwise transfers or disposes of all or substantially all of the Borrower's, the Guarantor's or such Borrower Entity's assets, makes or permits any fraudulent transfer or fraudulent conveyance of any of the Borrower's, the Guarantor's, or such Borrower Entity's assets, makes any bulk sale, sends any notice of any intended bulk sale, dies, becomes incompetent or insolvent (however such insolvency is evidenced), fails to pay, withhold or

CONFIDENTIAL

AS0006519

- 4 -

collect any tax as required by any statute, regulation or other law, suspends or ceases the Borrower's, the Guarantor's or such Borrower Entity's present business, has served or filed against the Borrower, the Guarantor or such Borrower Entity or against any of the Borrower's, the Guarantor's or such Borrower's Entity's assets any attachment, levy, tax lien, warrant or similar lien, or has entered against the Borrower, the Guarantor or such Borrower Entity or against any of the Borrower's, the Guarantor's or such Borrower Entity's assets any judgment, order or award of any court, agency or other governmental authority or of any arbitrator and such judgment, order or award is not discharged within thirty (30) days of the entry thereof; (3) the Borrower, the Guarantor or any Borrower Entity has any receiver, trustee, liquidator, sequestrator or custodian of the Borrower, the Guarantor or such Borrower Entity or any of the Borrower's, the Guarantor's or such Borrower Entity's assets appointed (whether with or without the Borrower's, the Guarantor's, or such Borrower Entity's consent), makes any assignment for the benefit of creditors or commences or has commenced against the Borrower, the Guarantor or such Borrower Entity any case or other proceeding pursuant to any bankruptcy or insolvency statute, regulation or other law of the United States of America or of any state or territory thereof or of any foreign jurisdiction or any other statute, regulation or other law relating to the relief of debtors, to the readjustment, composition or extension of indebtedness, to liquidation or to reorganization or any formal or informal proceeding for the dissolution, liquidation or winding up of the affairs of, or the settlement of claims against, the Borrower, the Guarantor or such Borrower Entity, which case or proceeding is not dismissed or effectively stayed within sixty (60) days after commencement; (4) any representation or warranty made in this Note, or any representation or warranty heretofore or hereafter made, or any financial statement heretofore or hereafter provided, to the Lender by or on behalf of the Borrower, the Guarantor or any Borrower Entity proves, as of the date of such representation, warranty or financial statement, to have been incorrect or misleading in any material respect or, if a financial statement, to have omitted any substantial contingent or unliquidated liability of, or any substantial claim against, the Borrower, the Guarantor or any Borrower Entity or there occurred, and was not disclosed to the Lender, before the execution and delivery to the Lender of this Note by the Borrower, any material adverse change in any information disclosed in any such representation or warranty heretofore made, or in any such financial statement heretofore provided, to the Lender; or (5) the Borrower defaults in the performance of any covenant of the Borrower set forth in this Note, or the Borrower, the Guarantor or any Borrower Entity defaults in the payment or performance of any other agreement between the Borrower or such Borrower Entity and the Lender.

Lender's Costs and Expenses. The Borrower shall pay to the Lender on demand each reasonable cost and expense (including, but not limited to, the reasonable fees and disbursements of counsel to the Lender, whether retained for advice, for litigation or for any other purpose) incurred by the Lender in endeavoring to (1) collect any amount owing pursuant to this Note, (2) enforce, or realize upon, any guaranty, endorsement or other assurance, any collateral or other security, or any subordination, directly or indirectly securing, or otherwise directly or indirectly applicable to, any such amount or (3) preserve or exercise any right or remedy of the Lender pursuant to this Note.

CONFIDENTIAL

AS0006520

DEC-26-2008  18:31

DEC-26-2008  18:12

P.005

P.005

- 5 -

Withholding. Any payment pursuant to this Note shall be made without any setoff or counterclaim and free and clear of and without any deduction or withholding for any tax, assessment, fee, charge, fine or penalty imposed by any government, political subdivision or other taxing authority; provided, however, that, if such deduction or withholding is required by applicable law, (i) such payment shall include such additional amount as is necessary to result in the net amount of such payment after such deduction or withholding not being less than the amount of such payment without such deduction or withholding, (ii) the Borrower shall make such deduction or withholding and (iii) the Borrower shall pay the amount of such deduction or withholding as required by applicable law.

Governing Law. This Note shall be governed by and construed, interpreted and enforced in accordance with the law of the State of New York, including without limitation the provisions of General Obligations Law Section 5-1401 and 5-1402, without regard to the law of any other jurisdiction

CONSENT TO JURISDICTION. THE BORROWER CONSENTS IN EACH ACTION OR OTHER LEGAL PROCEEDING COMMENCED BY THE LENDER ARISING OUT OF OR RELATED TO THIS NOTE TO THE NONEXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN THE STATE OF NEW YORK; WAIVES PERSONAL SERVICE OF PROCESS; AND AGREES THAT SERVICE OF PROCESS MAY BE EFFECTED BY THE LENDER BY REGISTERED MAIL TO THE BORROWER AT THE ADDRESS SET FORTH AT THE BEGINNING OF THIS NOTE OR IN ANY MANNER ALLOWED BY THE STATE OF NEW YORK OR THE FEDERAL LAWS OF THE UNITED STATES. THE BORROWER WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH ACTION OR OTHER LEGAL PROCEEDING.

JURY TRIAL WAIVER. THE BORROWER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT THE BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, WHETHER BASED ON ANY CONTRACT OR NEGLIGENT, INTENTIONAL OR OTHER TORT OR OTHERWISE, IN CONNECTION WITH (1) THIS NOTE OR ANY COLLATERAL OR OTHER SECURITY DIRECTLY OR INDIRECTLY SECURING ANY AMOUNT OWING PURSUANT TO THIS NOTE OR (2) ANY ACTION HERETOFORE OR HEREAFTER TAKEN OR NOT TAKEN, ANY COURSE OF CONDUCT HERETOFORE OR HEREAFTER PURSUED, ACCEPTED OR ACQUIESCED IN, OR ANY ORAL OR WRITTEN AGREEMENT OR REPRESENTATION HERETOFORE OR HEREAFTER MADE, BY OR ON BEHALF OF THE LENDER IN CONNECTION WITH THIS NOTE OR ANY SUCH COLLATERAL OR OTHER SECURITY.

This Note shall not be extended or modified orally. A fax transmission to the Lender of this Note signed by the Borrower, or an electronic transmission to the Lender of a PDF or similar file containing this Note signed by the Borrower, shall be fully effective and

CONFIDENTIAL

AS0006521

DEC-26-2008  18:31
DEC-26-2008  18:12

P.006

P.006

-6-

equivalent to the Borrower's execution and delivery to the Lender of a manually executed original.

ALL CITY FUNDING LLC
By: *[signature]*
Name:
Title: PRESIDENT

CONFIDENTIAL

AS0006522

DEC-26-2008 18:31

DEC-26-2008 18:17

P.007

P.002

-7-

STATE OF N Y )
                ) ss.
COUNTY OF Kings )

On the 26th day of December, in the year 2008, before me, the undersigned, a notary public in and for said state, personally appeared Edward Slinin, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

STEPHANIE PRASKER
NOTARY PUBLIC, State of New York
No. 01PR4861343
Qualified in Richmond County
Commission Expires May 22, 20 / /

DOC151/80669 Business 6512960v3

TOTAL P.002

CONFIDENTIAL

AS0006523

DEC-26-2008  18:31                                                                                     P.008

DEC-26-2008  18:13                                                                                     P.007

## GUARANTY AGREEMENT

On this 29th day of December, 2008, in consideration of MIDLAND RESOURCES HOLDING LIMITED, a company organized under the law of Guernsey having registered number 033664, with an address of Havelet House, 181 South Esplanade, St. Peter Port, Guernsey, Channel Islands GY1 3JS, (the "Lender"), heretofore or hereafter extending or agreeing to extend any credit or other financial accommodation to ALL CITY FUNDING LLC, a New York limited liability company, with an address of c/o Eduard Slinin, 42 Dora Lane, Holmdel NJ 07733, USA (the "Borrower") and for other valuable consideration, the receipt of which is acknowledged, the undersigned, EDUARD SLININ, an individual and U.S. citizen, having an address if 42 Dora Lane, Holmdel NJ 07733, USA (the "Guarantor") agrees with the Lender as follows:

1. DEFINITIONS. In this Agreement:

   a. "Collateral" means any collateral, subordination, guaranty, endorsement or other security or assurance of payment now or hereafter securing the payment of or otherwise applicable to any of the Obligations or any obligation of the Guarantor pursuant to this Agreement.

   b. "Obligations" means collectively all obligations, whether now or hereafter existing of the Borrower to the Lender under a Promissory Note, dated on or about the date of this Agreement, payable by the Borrower to the Lender, as such promissory note may be amended, extended, renewed or replaced form time to time.

   c. "Person" means (i) any individual, corporation, partnership, trust, unincorporated association, government or political subdivision, (ii) any court, agency or other governmental body or (iii) any other entity, organization or group.

   d. "Default" means an event of Default in the Note to which this Guarantee is attached.

2. GUARANTY. The Guarantor guarantees, without any setoff or other deduction, the payment when due, whether by acceleration or lapse of time or otherwise, of the Obligations. Such guaranty is a continuing, absolute and unconditional guaranty and a guaranty of payment rather than collection. This Guaranty shall become effective, if, as and when a Default in the underlying Note occurs, and same is not cured within the time allowed therefore.

3. EXPENSES. The Guarantor shall pay to the Lender on demand each cost and expense (including, but not limited to, if the Lender retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) hereafter incurred by the Lender in endeavoring to enforce any obligation of the Guarantor pursuant to this Agreement or preserve or exercise any right or remedy against the Guarantor pursuant to this Agreement or arising as a result of this Agreement.

CONFIDENTIAL                                                                                         AS0006524

DEC-26-2008 18:31

DEC-26-2008 18:13

P.009

P.008

- 2 -

4. **REINSTATEMENT OF OBLIGATIONS.** Each portion of the Obligations heretofore or hereafter paid or satisfied by any money that has been heretofore or is hereafter received, applied or retained by the Lender and is later recovered from the Lender as a result of any claim (including, but not limited to, any such claim involving any allegation of a preference or fraudulent conveyance or transfer) shall be reinstated as part of the Obligations for purposes of this Agreement as of the date it originally arose or accrued.

5. **TERMINATION.** This Agreement shall remain in full force and effect until, and shall terminate only upon, the final and irrevocable payment of (i) each of the Obligations and (ii) each cost and expense that the Guarantor is obligated to pay pursuant to this Agreement whether theretofore or thereafter arising.

6. **WAIVER OF RIGHT OF SUBROGATION AND SIMILAR RIGHTS.** The Guarantor irrevocably waives, without any notice, each right of subrogation, indemnification, reimbursement or contribution, and each similar right, against the Borrower heretofore or hereafter arising in connection with this Agreement or any of the Obligations until the Lender receives full and final payment of the Obligations.

7. **CERTAIN CONSENTS AND WAIVERS.**

   a. Except to the extent expressly provided in this Agreement, this Agreement shall not be modified or terminated, no obligation of the Guarantor pursuant to this Agreement and no right or remedy of the Lender pursuant to this Agreement or arising as a result of this Agreement shall be impaired or otherwise adversely affected, and no such right or remedy shall be waived, by any act, omission or other thing, whether heretofore occurred or hereafter occurring. The Guarantor irrevocably consents, without any notice, to each act, omission and other thing, whether heretofore occurred or hereafter occurring, that would or might, but for such consent, modify or terminate this Agreement, impair or otherwise adversely affect any such obligation, right or remedy or operate as a waiver of any such right or remedy. Without limiting the generality of the preceding two sentences, this Agreement shall not be modified or terminated by, no such obligation, right or remedy shall be impaired or otherwise adversely affected by, no such right or remedy shall be waived by, and such consent shall apply to, whether heretofore occurred or hereafter occurring, (i) any extension, renewal, refinancing or other modification or replacement, assignment, compromise, cancellation, discharge, invalidity, impairment, unenforceability (for any reason whatsoever, including, without limitation, lack of power and authority of the Borrower or lack of due authorization of any Person signing any instrument evidencing the Obligations on behalf of the Borrower), execution or change in any term or condition of, any defense with respect to, or any grant of any participation in, any of the Obligations or any obligation of the Borrower or any other Person, (ii) any acceptance of any other Person, (iii) any taking, increase or decrease in value, impairment or release of, any collection or sale or other disposition of or other realization upon, or any failure or delaying to call for, take any property as, hold, preserve, protect, insure, perfect, keep perfected or maintain the priority of any security interest in or other lien on or collect, sell or otherwise dispose of or otherwise realize upon, any Collateral, (iv) any exercise or waiver of, any failure or delaying to

CONFIDENTIAL

AS0006525

DEC-26-2008 18:31
DEC-26-2008 18:14
P.010
P.009

- 3 -

exercise, any forbearance from exercising, or any notice prior to exercising, any right or remedy of the Lender or any other Person relating to any of the Obligations or any Collateral or against the Borrower, the Guarantor or any other Person, (v) any case or other proceeding pursuant to any bankruptcy, insolvency or similar statute with respect to the Borrower, the Guarantor or any other Person, (vi) any failure of the Lender or any other Person to make, prove or vote any claim relating to any of the Obligations or any Collateral, or any failure of any such claim to be allowed, in any case or other proceeding pursuant to any bankruptcy, insolvency or similar statute, (vii) the acceptance by the Lender or any other Person of any writing intended by the Borrower or any other Person to create an accord and satisfaction with respect to any of the Obligations or any obligation of the Borrower, the Guarantor or any other Person, (x) the manner or order of any collection or sale or other disposition of or other realization upon any Collateral, (xii) the manner or order of application of any money applied in payment of any of the Obligations, (xii) any change in the ownership, membership, location, business, name, identity or structure of the Borrower or any other Person or (xiii) the execution and delivery to the Lender by the Guarantor of any agreement of guaranty other than this Agreement.

b. The Guarantor irrevocably waives, without any notice, each act and other thing upon which, but for such waiver, any obligation of the Guarantor pursuant to this Agreement or any right or remedy of the Lender pursuant to this Agreement or arising as a result of this Agreement would or might be conditioned. Without limiting the generality of the preceding sentence, no such obligation, right or remedy shall be conditioned upon, and such waiver shall apply to, (i) the acceptance of this Agreement by the Lender, (ii) any demand upon or presentment or protest to the Borrower, the Guarantor or any other Person, (iii) any exercise of any right or remedy of the Lender or any other Person relating to any of the Obligations or any Collateral or against the Borrower, the Guarantor or any other Person or (iv) any notice to the Borrower, the Guarantor or any other Person of the acceptance of this Agreement by the Lender, any incurring or nonpayment of any of the Obligations, any event or condition of default relating to any of the Obligations or any Collateral, any exercise of any right or remedy of the Lender or any other Person relating to any of the Obligations or any Collateral or against the Borrower, the Guarantor or any other Person, any action taken or not taken by the Lender or any other Person or any other matter.

8. MISCELLANEOUS.

a. The execution, delivery to the Lender and performance of this Agreement by the Guarantor shall not modify or terminate any other agreement or instrument (including, but not limited to, any agreement of guaranty) by which the Borrower, the Guarantor or any other Person is bound, or impair or otherwise adversely affect any obligation of the Borrower, the Guarantor or any other Person pursuant to any such other agreement or instrument.

b. This Agreement shall be binding upon the Guarantor and each legal representative, successor and assignee of the Guarantor, and shall inure to the benefit of and be enforceable by the Lender and each successor and assignee of the Lender.

CONFIDENTIAL

AS0006526

DEC-26-2008  18:31
DEC-26-2008  18:14
P.011
P.010

- 4 -

c. This Agreement contains the entire agreement between the Lender and the Guarantor with respect to the subject matter of this Agreement, and supersedes each action heretofore taken or not taken, each course of conduct heretofore pursued, accepted or acquiesced in, and each oral or written agreement and representation heretofore made, by or on behalf of the Lender with respect thereto. No action heretofore or hereafter taken or not taken, no course of conduct heretofore or hereafter pursued, accepted or acquiesced in, no oral or written agreement or representation heretofore made, and no oral agreement or representation hereafter made, by or on behalf of the Lender shall modify or terminate this Agreement, impair or otherwise adversely affect any obligation of the Guarantor pursuant to this Agreement or any right or remedy of the Lender pursuant to this Agreement or arising as a result of this Agreement or operate as a waiver of any such right or remedy. No modification of this Agreement or waiver of any such right or remedy shall be effective unless made in writing duly executed by the Lender and specifically referring to such modification or waiver.

d. All rights and remedies of the Lender pursuant to this Agreement or arising as a result of this Agreement shall be cumulative, and no such right or remedy shall be exclusive of any other such right or remedy.

e. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

f. This Agreement shall be governed by and construed, interpreted and enforced in accordance with the law of the State of New York, including without limitation the provisions of General Obligations Law Sections 5-1401 and 5-1402, without regard to the law of any other jurisdiction.

g. A fax transmission to the Lender of this Agreement signed by the Guarantor, or an electronic transmission to the Lender of a PDF or similar file containing this Agreement signed by the Guarantor, shall be fully effective and equivalent to the Guarantor's execution and delivery to the Lender of a manually executed original.

9. WITHHOLDING. Any payment pursuant to this Agreement shall be made by the Guarantor without any setoff or counterclaim and free and clear of and without any deduction or withholding for any tax, assessment, fee, charge, fine or penalty imposed by any government, political subdivision or other taxing authority; provided, however, that, if such deduction or withholding is required by applicable law, (i) such payment by the Guarantor shall include such additional amount as is necessary to result in the net amount of such payment after such deduction or withholding not being less than the amount of such payment without such deduction or withholding, (ii) the Guarantor shall make such deduction or withholding and (iii)

CONFIDENTIAL

AS0006527

DEC-26-2008  18:31                                                                                P.012

DEC-26-2008  16:15
                                                                                                   P.011

- 5 -

the Guarantor shall pay the amount of such deduction or withholding as required by applicable law.

10. **JURY TRIAL WAIVER.** THE GUARANTOR KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT THE GUARANTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, WHETHER BASED ON ANY CONTRACT OR NEGLIGENT, INTENTIONAL OR OTHER TORT OR OTHERWISE, IN CONNECTION WITH (1) THIS AGREEMENT, THE OBLIGATIONS OR ANY COLLATERAL OR (2) ANY ACTION HERETOFORE OR HEREAFTER TAKEN OR NOT TAKEN, ANY COURSE OF CONDUCT HERETOFORE OR HEREAFTER PURSUED, ACCEPTED OR ACQUIESCED IN, OR ANY ORAL OR WRITTEN AGREEMENT OR REPRESENTATION HERETOFORE OR HEREAFTER MADE, BY OR ON BEHALF OF THE LENDER IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS OR THE COLLATERAL.

11. **CONSENT TO JURISDICTION.** THE GUARANTOR CONSENTS IN EACH ACTION OR OTHER LEGAL PROCEEDING COMMENCED BY THE LENDER ARISING OUT OF OR RELATED TO THIS AGREEMENT TO THE NONEXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN THE STATE OF NEW YORK; WAIVES PERSONAL SERVICE OF PROCESS; AND AGREES THAT SERVICE OF PROCESS MAY BE EFFECTED BY THE LENDER BY REGISTERED MAIL TO THE GUARANTOR AT THE ADDRESS SET FORTH AT THE BEGINNING OF THIS AGREEMENT OR IN ANY MANNER ALLOWED BY THE STATE OF NEW YORK OR THE FEDERAL LAWS OF THE UNITED STATES. THE GUARANTOR WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH ACTION OR OTHER LEGAL PROCEEDING.

_____
EDUARD SLININ

TOTAL P.011

CONFIDENTIAL                                                                        AS0006528

DEC-26-2008 18:31 P.013

DEC-26-2008 18:17 P.001

- 6 -

## ACKNOWLEDGMENT

STATE OF NY )
: ss.
COUNTY OF Kings

On the 26th day of December, in the year 2008, before me, the undersigned, a notary public in and for said state, personally appeared Eduard Slinin, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Stephanie Prasker*

Notary Public

STEPHANIE PRASKER
NOTARY PUBLIC, State of New York
No. 35FR6261243
Qualified in Richmond County
Commission Expires May 22, 2011

00161/00669 Business 6513465v2

TOTAL P.013

CONFIDENTIAL
AS0006529