# Exhibit 4

to Eduard Slinin's Opposition to
Alex Shnaider's Motions in Limine

EXHIBIT 21



**MINUTES**
interrogation of a witness

Moscow "25" May 2009

The interrogation began in ____ hours ____ minutes. The interrogation ended in ____ hours ____ minutes.
Senior Investigator of the 4th Division CSO midrange with Moscow Police Captain Justice Romasheva OP, _____ in the room in accordance with Articles 189 and 190 (191) of the Code was questioned in a criminal case N 346 820, as a witness:

1. Last name, first name: Alex Schneider
2. Date of Birth: 1968
3. Place of birth: Leningrad, RSFSR
4. Place of residence and (or) registration: [redacted] 2K3, Toronto, Ontario, Canada
5. Citizenship: Canadian citizen
6. Education:
7. Marital status, family composition: Married Children: Jennifer - born in 1994, Eric - born in 1997, Rebecca - 2005 birth
8. Place of work: The owner and head of the International company Midland Group, Canada («Midland group» Canada)
9. Military service: No
10. Having a criminal record: None
11. A passport or other document certifying the identity of the witness: Canadian passport number [redacted] Series, issued December 18, 2007 07 North York, a passport is valid until December 18, 2012
12. Other information about the identity of the witness: _____

Witness

_____
(Signature)

Other person involved: attorney Kopenkin IO, submitted the order № 23 of December 10, 2008, issued by the branch number 1 NO "Moscow Corporate Bar"

Before questioning you've clarified my rights and responsibilities as the witness, provided by Part IV of the Article 56 of the Code:
 1) to refuse to testify against himself, his husband (his wife) and other close relatives which is determined by paragraph 4 of Article 5 of the Code of Criminal Procedure. When I agreed to testify I was warned that my testimony can be used in as evidence in a criminal case, including the event of my subsequent rejection of this testimony;
 2) to give evidence in my native language or a language that I fluently communicate on;
 3) the services of an interpreter free of charge;
 4) to challenge the interpreter is involved in the interrogation;
 5) to make motions and to appeal the actions (inaction) and decisions of the investigator, prosecutor and Court;
 6) to retain the services of the attorney for questioning in accordance with Part V, Article 189 of the Code;
 7) to apply for the application of security measures provided by Part III, Article 11 of the Code.

I was warned of criminal liability for refusal to testify under Article 308 of the Criminal Code and for perjury under Article 307 of the Criminal Code.

Witness

_____
(Signature)

Px 21-1
P000439

In essence, of the questions asked I can show the following:

I live with my family in Canada since the 1970s. Speak the Russian language perfectly and do not need an interpreter. Never been registered with the mental health clinics, have no head injuries.

I am the owner and the manager of the international company "Midland Group Canada» («Midland group» Canada), in which the business to be metals, real estate development and consulting.

I know Edward Slinin since 2004, but we have started to communicate closely within the late summer and early fall of 2005, now we maintain normal business relationship.

I don't know Kirill Dubov personally, has never met him or communicated with him, but I know that he is a friend of Edward Slinin.

I've met Vitaly Kachur once, in Moscow, in 2007, he wanted to buy my watch.

I don't know George Pirumov personally, we had never met but once, around the late spring - early summer 2008, he called me, and I spoke with him on the phone for about five minutes on "assignment" in favor of "Xaman holdings ltd ».

For several years I have worked closely with the Canadian company "Bombardier," I personally own an aircraft of the said manufacturer, have repeatedly assisted in the acquisition of the aircrafts of the said manufacturer, know personally some of the top executives of this company. Due to the good reputation within this company, I have an actual opportunity to purchase aircrafts from the manufacturer at the lowest price.

E. Slinin reached out to me over the phone in spring of 2007 while he was in Moscow and asked me if I continue to work with the Canadian company "Bombardier" and what would be the a purchase price for the planes of model CL-600-2B19 variant Challenger 850 Executive, I said something to him, I do not remember what it was.

Later, in late spring, early summer 2007, we met with E Slinin in New York, where I was on business. He told me that when he was in Moscow, and there is a Russian businessman who is interested in acquiring more "Bombardier" aircrafts, asking to clarify all the conditions of acquisition process.

I do remember that at that time, "Bombardier" was selling completed airplanes of this model at a price of approximately U.S. $30 million. In Russia, the planes of this model clearly worth more than U.S. $30 million, as the cheapest market for the sale of these aircrafts has always been in the United States, in other countries, particularly in Europe, prices for these models differed from the American market for $3 - 5 million U.S. dollars.

I explained to E. Slinin all typical conditions under which "Bombardier" entering into the purchase contracts at that time. He asked me to find out more diligently, since, in his words, there is a buyer in Moscow by the name of Pirumov having a desire to acquire aircraft models CL-600-2B19 variant Challenger 850 Executive in an amount of 4 units, and, if possible, to provide assist in the completion of these contracts.

Later, I explained to Slinin that the scheme for the purchase of aircraft, in which I am becoming an intermediary to the "Bombardier" in the transaction, should be as follows: the buyer acquires companies within Cyprus or BVI jurisdictions, in an amount equal to the number of purchased aircrafts, after the clarification of all contract terms. This condition was dictated by the established practice, for simplicity and anonymity of registration of the ownership of the aircraft, rather, then buying as an individual. Once companies, which are under my control at the time, executed the contracts with "Bombardier" for the manufacturing of the airplanes, I can enter into the contracts with a buyer from Russia. But in order to do not destroy a well established business relationship with "Bombardier" in this case, I had to be confident that Pirumov had money to fund these contracts on his accounts. Slinin told me that everything will be fine, as he reached a verbal agreement to accumulate Pirumov's money in the amount sufficient to pay the first payment on the contract on his account in Switzerland.

Some time later, around the summer of 2007, Slinin asked me for help in setting up the companies, which will acquire the ownership of the aircrafts. I gave Slinin the contact info of Michel Marechal, my own corporate attorney

P000440

Px 21-2

from Switzerland. Michel Marechal was involved, along with other legal issues, as matters of registration and acquisition of various companies.

As it was agreed between me and Slinin, and between Slinin and Pirumov, the acquisition scheme of purchasing aircrafts from "Bombardier" to the benefit of Pirumov to be as follows: Pirumov with the help of M. Marechal acquired ownership of five off-shore companies: «Blue industrial skies inc», «Stogan assets incorporated», «Setius technologies ltd», «Xaman holdings ltd», «Jofan holding limited». As I learned later, these companies were acquired by Pirumov and Sinin. Pirumov owned 70% of the shares and Slinin's company «Jets Worldwide LLC» - 30% of the shares. At the same time, I and E. Slinin acquired the 100% ownership of two companies: «Challenger aircraft company ltd» and «CL850 Aircraft investments ltd». I don't want to disclose the individual ownership percentage of shares in these companies, since according to American and Canadian laws it considers a trade secret. I had appointed the person I trust - Robert E. Lee as a Director of these companies.

In late fall 2007 Slinin informed me that Pirumov wants to buy in addition to aircrafts model Challenger 850 Executive another aircraft - Bombardier Global Express XRS.

In late autumn - early winter 2007, more precisely, I do not remember, Slinin told me that the funds sufficient to pay the first payment on contracts for the purchase of 4 aircrafts Challenger 850 Executive and a Bombardier Global Express XRS had been accumulated on the account of his company, and we can start processing the transactions. By that time the companies controlled by me, «Challenger aircraft company ltd» and «CL850 Aircraft investments ltd», and "Bombardier" had already entered into five contracts. As per Slinin, his attorneys and attorneys for Pirumov and Marechal had to complete the transfer of ownership of the mentioned above offshore companies to Pirumov and Slinin around Christmas time, December 25, 2007. I have instructed my attorneys to prepare contracts between the companies «Challenger aircraft company ltd »and« CL850 Aircraft investments ltd » and companies of Pirumov/Slinin - « Blue industrial skies inc», «Stogan assets incorporated», «Setius technologies ltd», «Xaman holdings ltd», «Jofan holding limited». As far as I know, at about Christmas time in 2007, attorneys have drafted the contracts, and they were sent to Slinin for approval.

Robert Lee reported to me, that he e-mailed five contracts to Slinin and Slinin called him on Christmas Eve from Paris and said that the Russian businessman Pirumov signed the contracts with his hand and two original copies of each contract (total 10 copies), signed by Pirumov, had been sent by express mail to Canada. Later, R. Lee signed with his hand and sent these contracts, in my opinion, to Slinin. I can not be more precise, because much time has passed.

Funds sufficient to pay the first payment on the five contracts, in the amount of about ten and a half million U.S. dollars were transferred from Slinin's account to the accounts of "Bombardier".

As far as I know, E. Slinin and G. Pirumov met in January 2008 and it was agreed to continue joint business leasing out aircrafts acquired by the companies «Blue industrial skies inc», «Setius technologies ltd», «Xaman holdings ltd», « Jofan holding limited», «Stogan assets incorporated» based on the Beltsi Airport, located in the Republic of Moldova. That's what I learned from Slinin.

As per Slinin, it started in spring of 2008, in his conversations with Pirumov, the latter is often raised the issue that the Russian banks do not give loans to Pirumov to fund further payments under the contracts, because the contracts are not "directly" from the manufacturer - "Bombardier", but with other companies, and Pirumov has no other investors, nor, he had his own money to fund the further payments. These circumstances have apparently provoked a scandal between Pirumov and Slinin. Pirumov began to demand that Slinin shall work out an assignment of rights granted by the contracts between "Bombardier" and the companies «Challenger aircraft company ltd» and «CL850 Aircraft investments ltd» in favor of the Pirumov's companies. This required certain approvals from the "Bombardier", as in practice, such an assignment, "Bombardier" exercised only in respect of inter-dependent companies. Yielding to Slinin's persistent requests, I agreed to contribute to the conclusion of a three party agreement between the «Bombardier», «Challenger aircraft company ltd» and «Xaman holdings ltd». This occurred as follows:

I think, in August 2008, the three party agreement has been signed on the assignment of rights, interests, duties and obligations under the aircraft purchase agreement between the «Bombardier Inc» and the «Challenger aircraft

company ltd» with the replacement of the contract: instead of «Challenger aircraft company ltd» rights and obligations under the treaty acquired the company «Xaman Holdings Ltd». Thus, a company controlled by Pirumov, acquired from the manufacturer an airplane CL-600-2B19 Challenger 850 Executive version of the price specified in the contract of sale between «Bombardier Inc» and the «Challenger aircraft company ltd» - that is, 24,550,000 U.S. dollars instead of the original cost of aircraft of 26,550,000 U.S. dollars, paid under the terms of the agreement between the «Challenger aircraft company ltd» and «Xaman Holdings Ltd», the first payment in the amount of 3,450,000 U.S. dollars. Consequently, a company controlled by Pirumov got an instant cost savings of 550,000 U.S. dollars.

At the urging of Pirumov, on August 18th, 2008, «Challenger aircraft company ltd», represented by Robert E. Lee and the company «Xaman Holdings Ltd» represented by G. Pirumov had entered into the contract was made on the settlement, the essence of which was that the contract of sale of aircraft entered into between the companies «Challenger aircraft company ltd» and «Xaman Holdings Ltd» has been terminated without any claims on both sides and, at the same time, the company «Challenger aircraft company ltd» assign its rights under the contract of sale of the aircraft S850-0172 with «Bombardier Inc» to the company «Xaman Holdings Ltd».

Thus, on August 18th 2008, the company «Xaman Holdings Ltd», owned by Pirumov, acquired all the rights to one of the aircrafts CL-600-2B19 Challenger 850, the Executive version, subject to fulfillment of the committed earlier contractual obligations to make the second and third payment under a contract of sale of the aircraft at a rate of U.S. $17,000,000 in November 2009 and U.S. $5,550,000 between October 31 and November 30, 2010 respectively.

As far as I know, at the urging of Pirumov, on July 3, 2008, companies «Challenger aircraft company ltd», represented by Robert Lee and «Blue industrial skies inc» represented by Vadim Zilberman has entered into the contract was made on the settlement, the essence of which was that the aircraft purchase agreement, signed between the companies «Challenger aircraft company ltd» and «Blue industrial skies inc» has been terminated without any claims on both sides and at the same time the company «Challenger aircraft company ltd» begins to assign its rights under the contract of sale of the aircraft CL-600-2B19 variant Challenger 850 Executive with the manufacturer of the aircraft in favor of the «Blue industrial skies inc». These actions took place in analogy with the above situation, in order to transfer the rights and obligations under the contract of sale of the aircraft between «Bombardier Inc» and the «Challenger aircraft company ltd» on the second plane CL-600-2B19 variant Challenger 850 Executive directly to the company, owned by Pirumov: «Blue industrial skies inc».

Implementing these, Pirumov suggested to Slinin not to assign the rights and obligations of the company «Challenger aircraft company ltd» under the contract of sale of the aircraft, but acquire the ownership of the company «Blue industrial skies inc» from him (Pirumov). It has been done by Slinin. Thus, Edward Slinin acquired all the rights and obligations of the company «Blue industrial skies inc» to the company «Challenger aircraft company ltd», and, thus, acquired all the rights to the aircraft being built at the «Bombardier Inc» manufacturing facility, paying Pirumov several million U.S. dollars. However, I don't know for sure all the details, circumstances and conditions of the Slinin's acquisition (or rather his company «Jets Worldwide LLC») of 100% ownership of the company «Blue industrial skies inc».

Witness

_____
(Signature)

Before, during or after the interrogation of a witness persons involved

_____
(Their procedural position, surname, initials)

_____ statements.    Contents: _____
(Received, not received)

Witness _____
(Signature)

Other person involved: _____
(Signature)

_____
(Signature)

Minutes read by _____
(Personally or aloud by the investigator)

Notes to the protocol _____
(Content of the comments or instructions

_____
in their absence)

Witness _____
(Signature)

Other person involved: _____
(Signature)

Px 21-5
P000443