# Exhibit 5

to Eduard Slinin's Opposition to
Alex Shnaider's Motions in Limine

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Case No. 15-cv-9674 (RJS)

EDUARD SLININ,

    Plaintiff,

v.

ALEX SHNAIDER,

    Defendant.

## DECLARATION OF OLGA ALEINIK
## IN SUPPORT OF EDUARD SLININ'S OPPOSITION TO
## ALEX SHNAIDER'S MOTIONS IN LIMINE

I, Olga Aleinik, declare as follows:

1. I am over 18 years of age.

2. I have personal knowledge of the facts in this declaration.

3. If called to testify, I would and could testify to the facts in this declaration.

4. I am an associate at the law firm of Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP.

5. Eduard Slinin is a client of my law firm.

6. In the course of Mr. Slinin's lawsuit against Alex Shnaider, we learned that Mr. Shnaider gave a statement to Russian law enforcement authorities.

7. Because I speak and write Russian fluently, I was asked to assist in obtaining a copy of that statement.

8. Another of Mr. Slinin's lawyers, Laurence Lebowitz, drafted a request for the statement.

9. I translated that request into the Russian and signed it on behalf of Ethan Gerber, a partner at my firm. A true and correct copy of the translated request is attached as exhibit 1 to this declaration.

1

10. Mr. Slinin hired a lawyer in Russia named Vladimir Seregin to assist us in obtaining a company of the Shnaider statement.

11. I sent the translated request to Mr. Seregin by email. That email is the first page of exhibit 1.

12. Mr. Seregin emailed back, including a copy of the Shnaider statement in Russian. A true and correct copy of Mr. Seregin's email and the Shnaider statement in Russian is attached as exhibit 2.

13. Having received Mr. Seregin's email and the Shnaider statement in Russian, I then had the statement translated. Christine Li, EBT clerk at Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, ordered a certified translation of the statement from Russian into English at LIS Translations Group that fulfilled the order on or about December 18, 2017.

14. The translated Shnaider statement, including the cover letter from Mr. Seregin to Mr. Gerber, is what Eduard Slinin identified as plaintiff's trial exhibit 22, which I understand is the subject of a motion *in limine* by Mr. Shnaider.

I declare that these facts are true under penalty of perjury under the laws of the United States.
Dated: November 15, 2018.

Olga Aleinik

# Exhibit 1

to the Declaration of Olga Aleinik
in Support of Eduard Slinin's Opposition to Alex Shnaider's Motions in Limine

# Olga Aleinik

| | |
|---|---|
| **From:** | Olga Aleinik |
| **Sent:** | Friday, December 01, 2017 5:32 PM |
| **To:** | ugena86@gmail.com |
| **Subject:** | Official request addressed to Agafieva N.I. |
| **Attachments:** | letter to AGAFIEVA N I24655020171201180428.pdf |

Good evening,

Please see attached a copy of the official correspondence addressed to Agafieva N.I.

Sincerely,

*Olga Aleinik, Esq.*

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**

| *Associate* | | Brooklyn Office |
|---|---|---|
| Tel: 718-215-5300 x622 | | 1 Metrotech Center |
| Fax: 718-581-5050 | | Suite 1701 |
| Email: OAleinik@Abramslaw.com | | Brooklyn, New York 11201 |

| Long Island | Manhattan | Brooklyn | Rochester |
|---|---|---|---|
| (516) 328-2300 | (212) 279-9200 | (718) 215-5300 | (585) 218-9999 |

WWW.ABRAMSLAW.COM

CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient.

# ABRAMS ⬛ FENSTERMAN

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP

Attorneys at Law
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Telephone: (718) 215-5300
Fax: (718) 215-5304
www.abramslaw.com

December 1, 2017

Начальнику ГСУ ГУ МВД России по г.Москве
Агафьевой Н.И.
г. Москва, ул. Новослободская 45

Относительно: Показаний Александра Шнайдера данных 25 Мая, 2009 года, по делу номер 346820 возбужденному по заявлению Григоия Пирумова

Уважаемая Наталья Ивановна,

Наша адвокатская фирма представляет интересы Эдуарда Слинина относительно его гражданского иска против Александра Евсеевича ("Алекса") Шнайдера. В настоящее время дело находится на рассмотрении в в Южном Округе Федерального Суда Соединенных Штатов Америки. В своем иске наш клиент требует возмищения полагающейся ему части прибыли полученной в результате совместного бизнес предприятия по купле-продаже частных самолетов.

В ходе нашего расследования мы узнали о том, что 25 Мая 2009 года господин Шнайдер дал показания Российским следователям по делу основанном на обвинениях Григория Пирумова в связи с продажей частных самолетов. Мы полагаем, что нам необходимо получить копию данных показаний, так как они помогут в построении доказательной базы для иска моего клиента против господина Шнайдера.

По нашей информации, запрос относительно предоставления копии вышеупомянутых показаний должен быть аддрессован к Вам. Пожалуйста учтите, что нам необходима копия показаний с подписью господина Шнайдера. В дополнение, мы хотим запросить любые заявления сделанные господином Шнайдером в связи с расследованием проведенным Российскими властями.

Это письмо является нашим официальным запросом на предоставление копии показаний

господиина Шнайдера данных и подписанных им 25 мая 2009 года. А так же запросом его любых других заявлений относительно дела возбужденного на основании заявления господина Пирумова. Мы просим принять во внимание, что копия данных показаний должна быть нотариально заверена. Это необходимо в подтверждение того, что копия соответствует оригиналу который находится в вашем следственном файле.

Мы надеемся что это письмо является достаточным основанием для предоставелние запрашиваемых нами документов. В противном случае, просим уведомить нас о том что еще необходимо. Вы можете связаться со мной по имейлу .Если этого письма достаточно я организую передачу и доставку документов как только вы сообщите мне о их готовности.

Позвольте выразить вам благодарность за помощь и внимаие.

С уважением,

*Ethan Gerber*
By: Ethan Gerber, Esq. *O.A*

## CERTIFICATE OF SERVICE

I certify that I caused the preceding document to be served on all ECF-registered counsel of record by filing it via the Court's CM/ECF system on the below-indicated date.

Dated: November 15, 2018.                                So certified.


                                                         /s/ Tom Kayes

# Exhibit 2

to the Declaration of Olga Aleinik
in Support of Eduard Slinin's Opposition to Alex
Shnaider's Motions in Limine

# Olga Aleinik

| | |
|---|---|
| **From:** | Владимир Серегин <seregin74@me.com> |
| **Sent:** | Wednesday, December 13, 2017 9:45 AM |
| **To:** | Ethan Gerber |
| **Cc:** | Olga Aleinik; Геннадий Удунян |
| **Subject:** | Протокол допроса.pdf.pdf |
| **Attachments:** | Протокол допроса.pdf.pdf; ATT00001.txt |

**Адвокат Серегин Владимир Владимирович**
регистрационный номер 77/9644 в реестре адвокатов г. Москвы

КА «МГКА «Серегин и партнеры», улица Бойцовая, дом 22, Москва, Россия, 107150
телефон/ факс +7 985 231 05 69   e-mail: seregin@seregin-partner.ru

**Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf&Caron, LLP**
Attorney ar Law

1 MetroTech Center, Suite 1701
Brooklyn, New York, 11201

**Ethan Gerber**

Уважаемый господин Гербер!

В соответствии с вашим поручением об оказании юридической помощи и на основании полномочий, установленных для адвокатов Федеральным законом «Об адвокатской деятельности и адвокатуре в Российской Федерации» и Уголовно-процессуальным кодексом Российской Федерации, я ознакомился с уголовным делом № 346820, возбужденным 24 ноября 2008 года следователем Следственной части Следственного управления при Управлении внутренних дел по Центральному административному округу г. Москвы Алтыновым Д.А. по заявлению Пирумова Г.А. и показаниями Шнайдера Александра, 03 августа 1968 года рождения, допрошенного по данному уголовному делу 25 мая 2009 года в качестве свидетеля старшим следователем 4 отдела Следственной части Главного следственного управления при Главном управлении внутренних дел города Москвы Ромашовой О.П., с соблюдением требований, установленных ст.ст.189-190 (191) Уголовно-процессуального кодекса Российской Федерации.

Копия протокола допроса свидетеля Шнайдера Александра от 25 мая 2009 года, заверенного печатью ГСУ ГУ МВД России по г. Москве направляется в Ваш адрес.

Приложение: на 9 листах

12 декабря 2017 года

С уважением, Владимир Серегин



# ПРОТОКОЛ
## допроса свидетеля

г. Москва «25» мая 2009 г.

Допрос начат в _08_ ч _20_ мин.
Допрос окончен в _10_ ч _40_ мин.

Ст. следователь 4-го отдела СЧ ГСУ при ГУВД г. Москвы капитан юстиции Ромашева О. П., в помещении ГСУ при ГУВД по г.Москве – следственном кабинете №321 в соответствии со ст. 189 и 190 (191) УПК РФ допросил по уголовному делу N 346820, в качестве свидетеля:

1. Фамилия, имя, отчество: Шнайдер Александр
2. Дата рождения: 03 августа 1968 г.р.
3. Место рождения: г.Ленинград, РСФСР
4. Место жительства и (или) регистрации: 91 Old Colony road, M2L 2K3, Toronto, Ontario, Canada, тел.+1-416-722-55-93
5. Гражданство: гражданин Канады
6. Образование: высшее
7. Семейное положение, состав семьи: Женат, дети: Дженифер – 1994 года рождения, Эрика – 1997 года рождения, Ребекка – 2005 года рождения
8. Место работы: Собственник и руководитель международной корпорации Мидланд Групп Канада(«Midland group» Canada), по адресу:259 YORKLAND ROAD TORONTO, ONT, Canada
9. Отношение к воинской обязанности: не военнообязанный
10. Наличие судимости: со слов не судим
11. Паспорт или иной документ, удостоверяющий личность свидетеля: паспорт гражданина Канады серия ВА № 362018, выдан 18 декабря 2007 года 07 North York, паспорт действителен до 18 декабря 2012 года
12. Иные данные о личности свидетеля: _____

Свидетель _____
(подпись)

Иные участвующие лица: адвокат Копёнкин И.О., представивший ордер № 23 от 10 декабря 2008 г., выданный Филиалом №1 НО «Московская корпоративная коллегия адвокатов»

Перед началом допроса мне разъяснены права и обязанности свидетеля, предусмотренные частью четвертой ст. 56 УПК РФ.
1) отказаться свидетельствовать против самого себя, своего супруга (своей супруги) и других близких родственников, круг которых определен п. 4 ст. 5 УПК РФ. При согласии дать показания я предупрежден__ о том, что мои показания могут быть использованы в

качестве доказательств по уголовному делу, в том числе и в случае моего последующего отказа от этих показаний;

2) давать показания на родном языке или языке, которым я владею;

3) пользоваться помощью переводчика бесплатно;

4) заявлять отвод переводчику, участвующему в допросе;

5) заявлять ходатайства и приносить жалобы на действия (бездействие) и решения дознавателя, следователя, прокурора и суда;

6) являться на допрос с адвокатом в соответствии с частью пятой ст. 189 УПК РФ;

7) ходатайствовать о применении мер безопасности, предусмотренных частью третьей ст. 11 УПК РФ.

Об уголовной ответственности за отказ от дачи показаний по ст. 308 УК РФ и за дачу заведомо ложных показаний по ст. 307 УК РФ предупрежден__

Свидетель 

(подпись)

По существу заданных мне вопросов могу показать следующее:

В Канаде я проживаю вместе с моей семьей с 1982 года. Русским языком владею в совершенстве и в услугах переводчика не нуждаюсь. Никогда не состоял на учете в НД и ПНД, травм головы не имею.

Я являюсь владельцем и руководителем международной компании «Мидланд Групп Канада»(«Midland group» Canada), в сфере бизнеса которой находиться металлургия, девелопмент и консалтинг.

С Эдуардом Слининым знаком с 2004 года, но тесно мы стали общаться с конца лета-начала осени 2005 г. В настоящее время отношения между нами нормальные, деловые.

С Кириллом Дубовым лично не знаком, никогда с ним не общался, но знаю, что он является товарищем Эдуарда Слинина.

Виталия Качура видел один раз, в Москве в 2007 году, он хотел купить у меня часы.

Георгия Пирумова лично не знаю, мы с ним никогда не встречались, но один раз, примерно в конце весны – начале лета 2008 г. он мне звонил, и я с ним переговорил по телефону около пяти минут по вопросам условий заключенных контрактов.

Уже несколько лет я тесно сотрудничаю с канадской компанией «Бомбардье», я имею в своей собственности самолет указанного производителя, неоднократно оказывал содействие в приобретении самолетов данной компании, очень хорошо знаю некоторых руководителей данной компании. Благодаря своей хорошей репутации в данной компании, я имею фактическую возможность приобретать самолеты у производителя по самой низкой цене. По вопросам приобретения пяти нижеуказанных самолетов для

господина Пирумова Г.С. я общался с сотрудником международного отдела продаж компании «Бомбардье» - Джаиддом Карим Фазал, который в настоящее время в данной компании не работает.

Весной 2007 г. мне на телефон позвонил Э. Слинин, который в тот момент находился в Москве и спросил меня, продолжаю ли я сотрудничать с канадской компанией «Бомбардье» и сколько стоят самолеты этой компании модели CL-600-2B19 variant Challenger 850 Executive, я ему что-то ответил, сейчас не помню, что именно.

Позднее, в конце весны, в начале лета 2007 года, мы встретились с Э.Слининым в Нью-Йорке, где я был по вопросам бизнеса. Он мне сказал, что когда он был в Москве, один русский бизнесмен, заинтересованный в приобретении нескольких самолетов компании «Бомбардье», просил уточнить все условия по их приобретению.

Я точно помню, что на указанный период времени готовые самолеты производства компании «Бомбардье» реализовывались на рынке примерно по цене от 30 миллионов долларов США. В России самолеты данной модели стоили однозначно более 30 миллионов долларов США, так как самый дешевый рынок по продаже самолетов всегда был в Америке, в других странах, в частности в Европе, цены на данные модели отличались от американского рынка.

Я объяснил Э.Слинину все типовые условия, на которых компания «Бомбардье» заключала контракты в тот период времени. Он попросил меня выяснить все более тщательно, так как, с его слов, в Москве есть покупатель, по фамилии Пирумов, имеющий желание приобрести несколько самолетов модели CL-600-2B19 variant Challenger 850 Executive в количестве 4-х штук, и при возможности оказать содействие в заключении этих контрактов.

Спустя некоторое время, я объяснил Слинину, что схема по покупке самолетов, в которой я выступаю перед компанией «Бомбардье» в качестве посредника (комиссионера) в сделке, должна выглядеть следующим образом: покупатель приобретает компании по юрисдикции Кипра или БиВиАй, в количестве равном количеству покупаемых им самолетов, после уточнения всех условий контрактов. Это условие было продиктовано сложившейся практикой, для простоты и обезличенности оформления права собственности на самолет очень удобно его покупать не на физическое лицо, а на фирму. После того, как подконтрольные мне компании заключат с компанией «Бомбардье» контракты на постройку самолетов, я могу заключить контракты на поставку данных самолетов с покупателем из России. Но для того, что бы мне не портить деловые отношения с компанией «Бомбардье» в данном случае, я должен быть четко убежден, что деньги на оплату этих контрактов у Пирумова есть на счетах. Слинин мне сказал, что все будет хорошо, так как он достиг устной договоренности с Пирумовым об аккумулировании денег в размере, достаточном для оплаты первых платежей по контрактам на своём счету в Швейцарии.

Спустя некоторое время, примерно летом 2007 г. Слинин обратился ко мне за помощью в приобретении на свое имя и имя Пирумова компаний-покупателей самолетов. Я дал Слинину координаты своего корпоративного

юриста из Швейцарии – Мишеля Маришаля, который занимался, наряду с другими юридическими вопросами, так же вопросами оформления и приобретения фирм.

Согласованная между мной и Слининым, и между Слининым и Пирумовым, схема по приобретению в пользу Пирумова самолетов компании «Бомбардье» выглядела следующим образом:

Пирумов с помощью М.Маришаля приобрел право собственности на пять оффшорных предприятий:

«Blue industrial skies inc», «Stogan assets incorporated», «Setius technologies ltd», «Xaman holdings ltd», «Jofan holding limited». Как я узнал позже, указанные компании приобретались Пирумовым и Слининым в соотношении 70/30, то есть в данных компаниях Пирумову принадлежало 70% акций, а компании Слинина - «Jets Worldwide LLC» - 30% акций.

Одновременно с этим, я совместно с Э. Слининым, приобрел право собственности на два подконтрольных предприятия: «Challenger aircraft company ltd» и «CL850 Aircraft investments ltd». Соотношение долей в данных предприятиях я не хотел-бы называть, так как по американским и канадским законам это составляет коммерческую тайну. Директором данных компаний был назначен доверенный мне человек – Роберт Ли.

В конце осени 2007 г. Слинин мне сообщил, что Пирумов хочет купить помимо самолетов модели Challenger 850 Executive ещё один самолет Bombardier Global Express XRS.

В конце осени - начале зимы 2007 года, точнее я сейчас не помню, Слинин сообщил мне, что денежные средства, достаточные для оплаты первых платежей по контрактам на приобретение 4-х самолетов Challenger 850 Executive и одного Bombardier Global Express XRS уже с аккумулированы на счете его компании и можно начинать оформление сделки. К тому моменту между подконтрольными мне компаниями «Challenger aircraft company ltd» и «CL850 Aircraft investments ltd» и компанией «Бомбардье» уже были заключены пять контрактов. Со слов Слинина, его юристы, юристы Пирумова и юристы Маришаля должны были закончить оформление права собственности Пирумова и Слинина на вышеуказанные оффшоры примерно к Рождеству, то есть к 25 декабря 2007 г. Я дал указание своим юристам подготовить контракты между компаниями «Challenger aircraft company ltd» и «CL850 Aircraft investments ltd» и компаниями Пирумова\Слинина - «Blue industrial skies inc», «Stogan assets incorporated», «Setius technologies ltd», «Xaman holdings ltd», «Jofan holding limited». Насколько мне известно, к Рождеству 2007 г. юристы подготовили тексты контрактов, и они были посланы Слинину на согласование.

Как мне доложил Роберт Ли, он по просьбе Слинина выслал тексты пяти контрактов по электронной почте в адрес Слинина и последний ему позвонил в канун Рождества из Парижа и сказал, что российский бизнесмен Пирумов подписал данные контракты со своей стороны и по два экземпляра указанных контрактов (всего 10 экземпляров), подписанные Пирумовым, отправлены по экспресс почте в Канаду. В дальнейшем Р.Ли, подписал со своей стороны указанные контракты и отправил, по-моему, в адрес Слинина, точнее сказать не могу, так как прошло много времени.

Со счета Слинина деньги в размере, достаточном для оплаты первых платежей по пяти контрактам, то есть в размере около десяти с половиной миллионов долларов США были перечислены на расчетные счета компании «Бомбардье», а осатвшиеся денежные средства были получены мною и Слининым в качестве прибыли по результатам участия в данных сделках. Каким именно образом я распорядился полученными в качестве прибыли денежными средствами, я пояснять не желаю.

Со слов Слинина, начиная с весны 2008 года, в его разговорах с Пирумовым, последним часто поднимался вопрос о том, что российские банки не дают Пирумову кредитов на дальнейшую оплату по контрактам, так как контракты заключены не на «прямую» с заводом-изготовителем – «Бомбардье», а с фирмами, других инвесторов у Пирумова нет, как и нет у него собственных денег для дальнейшей оплаты. Эти обстоятельства видимо спровоцировали Пирумова на скандал со Слининым. Пирумов стал требовать, чтобы Слинин осуществил «эссаймент», то есть уступку прав по заключенным между компанией «Бомбардье» и компаниями «Challenger aircraft company ltd» и «CL850 Aircraft investments ltd» контрактам в пользу компаний Пирумова. Это требовало определенных согласований с «Бомбардье», так как по практике подобные уступки «Бомбардье» осуществляло только в отношении взаимозависимых компаний. Уступив настойчивым просьбам Слинина, я согласился поспособствовать заключению тройственного соглашения между «Бомбардье», «Challenger aircraft company ltd» и «Xaman holdings ltd». Это происходило следующим образом:

По моему, в августе 2008 г. было подписано трехстороннее соглашение о переуступке прав, процентов, обязанностей и обязательств, вытекающих из договора купли-продажи воздушного судна между «Bombardier Inc» и «Challenger aircraft company ltd» с заменой стороны договора: вместо компании «Challenger aircraft company ltd» права и обязанности по указанному договору приобретала компания «Xaman Holdings Ltd». Таким образом, компания, подконтрольная Пирумову, приобретала у компании-производителя один самолет CL-600-2B19 вариант Challenger 850 Executive по цене указанной в договоре купли-продажи между «Bombardier Inc» и «Challenger aircraft company ltd» - т.е. за 24.550.000 долларов США вместо первоначальной стоимости самолета в размере 26.550.000 долларов США, при этом я получил от Слинина денежные средства – комиссионные, изначально запланированные в качестве прибыли в этом конкретном проекте (контракте). Финансовых претензий по вопросу «Xaman Holdings Ltd» у меня ни к кому нет.

18 августа 2008 г. по настоянию Пирумова между компаниями «Challenger aircraft company ltd» в лице Роберта Ли и компанией «Xaman Holdings Ltd» в лице Г.Пирумова был заключен договор об урегулировании, суть которого заключалась в том, что договор купли-продажи воздушного судна, заключенный между компаниями «Challenger aircraft company ltd» и «Xaman Holdings Ltd» расторгается без каких-либо претензий с обеих сторон и одновременно с этим компания «Challenger aircraft company ltd» переоформляет свои права по договору купли-продажи воздушного судна C850-0172, заключенного с «Bombardier Inc» на компанию «Xaman Holdings Ltd».

Таким образом, 18 августа 2008 г., компания «Xaman Holdings Ltd», принадлежащая Пирумову, приобрела все права на один из самолетов CL-600-2B19 вариант Challenger 850 Executive, при условии исполнения ранее взятых на себя обязательств по оплате второго и третьего платежа по договору купли-продажи воздушного судна в размере 17.000.000 долларов США и 5.550.000 долларов США соответственно.

Насколько мне известно, 03 июля 2008 г. по настоянию Пирумова между компаниями «Challenger aircraft company ltd» в лице Роберта Ли и компанией «Blue industrial skies inc» в лице Вадима Зильбермана был заключен договор об урегулировании, суть которого заключалась в том, что договор купли-продажи воздушного судна, заключенный между компаниями «Challenger aircraft company ltd» и «Blue industrial skies inc» расторгается без каких-либо претензий с обеих сторон и одновременно с этим компания «Challenger aircraft company ltd» начинает переоформление своих прав по договору купли-продажи воздушного судна CL-600-2B19 variant Challenger 850 Executive с компанией изготовителем самолета в пользу «Blue industrial skies inc». Указанные действия происходили по аналогии с вышеописанной ситуацией, с целью перевести права и обязанности по договору купли-продажи воздушного судна между «Bombardier Inc» и «Challenger aircraft company ltd» на второй самолет CL-600-2B19 variant Challenger 850 Executive напрямую на компанию, принадлежащую Пирумову: «Blue industrial skies inc».

В процессе осуществления указанных мероприятий, Пирумов, предложил Слинину не переуступать права и обязательства компании «Challenger aircraft company ltd» по договору купли-продажи воздушного судна, а выкупить у него (Пирумова) право собственности на компанию «Blue industrial skies inc». Что и было сделано Слининым. Таким образом, Эдуард Слинин приобрел все права и обязательства компании «Blue industrial skies inc» перед компанией «Challenger aircraft company ltd», а, следовательно, приобрел и права на самолет, строящийся на заводе компании «Bombardier inc.», заплатив при этом Пирумову несколько миллионов долларов США. Однако, всех обстоятельств и условий приобретения Слининым (точнее его компанией «Jets Worldwide LLC») 100% акций компании «Blue industrial skies inc» я доподлинно не знаю, причитающиеся мне комиссионные, как в случае с компанией «Xaman Holdings Ltd» я от Слинина пока не получил, однако он обещал мне выплатить эти деньги после продажи указанного самолета.

Таким образом, я ни в чем господина Пирумова Г.С. не обманывал, не вводил его в заблуждение относительно приобретения данных самолетов, все пять контрактов заключенных с компаниями Пирумова Г.С. носили легитимный характер, и в случае исполнения обязательств по контрактам перед компанией «Бомбардье» Пирумов Г.С. получит три самолета, так как один самолет («Blue industrial skies inc») он продал Слинину, а компания «Xaman Holdings Ltd» имеет прямой контракт с компанией «Бомбардье».

Вопрос к А.Шнайдеру: «Поясните, в связи с чем на данный момент не переуступлены права на три оставшиеся самолета на компании Пирумова Г.С. – «Стоган асеетс инкорпорейтед», «Джофан Холдинг Лимитед», «Сетиус Технолоджис Лтд»?»

Ответ А.Шнайдера: «Пирумову Г.С. было предложено предоплатить остаток денежных средств изначально составлявших прибыль компании «Чэлленджер эркрафт кампании» и «СЛ 850 Эйкрафт Инвестментс Лтд.», в этом случае ему со стороны указанных компаний подписывались все уступки прав на самолеты. В связи с тем, что Пирумов Г.С. отказался следовать предложенным условиям, на сегодняшний момент он должен производить выплаты согласно графикам, указанным в контрактах с его компаниями «Стоган асеетс инкорпорейтед», «Джофан Холдинг Лимитед», «Сетиус Технолоджис Лтд».

Свидетель _____

Перед началом, в ходе либо по окончании допроса свидетеля от участвующих лиц свидетеля А. Шнайдера, адвоката И.О.Копенкина заявления _не поступили_ . Содержание заявлен__: ___
(поступили, не поступили)

Свидетель _____
(подпись)

Иные участствующие лица: _____
(подпись)

_____
(подпись)

Протокол прочитан _вслух переводчиком_
Замечания к протоколу _отсутствуют_

Свидетель _____
(подпись)

Иные участствующие лица: _____
(подпись)

_____
(подпись)

Следователь _____
(подпись)



