# Exhibit 6

to Eduard Slinin's Opposition to
Alex Shnaider's Motions in Limine

EXHIBIT 22

# Attorney Vladimir Vladimirovich Seregin

Registration No. 77/9644 in the Register of Attorneys, city of Moscow

Bar Association "Moscow City Bar Association "Seregin and Partners", 22 Boltsovaya street, Moscow, Russia 107150
Telephone/Fax +7 985 231 05 69 e-mail: seregin@seregin-partner.ru

**Abrams, Fensterman, Eisman,
Formato, Ferrara, Wolf&Caron, LLP**
Attorney at Law

1 MetroTech Center, Suite 1710
Brooklyn, New York, 11201

**Ethan Gerber**

Dear Mr. Gerber,

In accordance with your request for legal assistance and based on authorities established for attorneys by the Federal Law "About Practice of Law and Legal Profession in the Russian Federation" and the Criminal Procedure Code of Russian Federation, I reviewed the criminal case No.346820 which was initiated on November 24, 2008, by a D.A. Altynov, Investigator of the Investigative Unit of the Investigation Division of the Department of Internal Affairs for the Central Administrative District of Moscow based on the application of G.A. Pirumov, and the testimony of Alexander Shnaider, born on August 3, 1968, who was interviewed for this criminal case on May 25, 2009 as a witness by the senior investigator of the 4th section of the Investigative Unit of the Main Investigation Department of the Moscow Main Internal Affairs Department O.P. Romashova, in compliance with requirements established by Articles 189-190 (191) of the Criminal Procedure Code of Russian Federation (RF).

A copy of the Interview Record of Witness Alexander Shnaider of May 25, 2009, certified by the seal of the Main Investigation Department of the Main Department of Ministry of Internal Affairs of Russia is submitted to you.

Attachment: 9 pages

December 12, 2017

Sincerely

Vladimir Seregin,

Official Seal

Px 22-1

# RECORD of
## Witness Interview

City of Moscow                                                                                 May 25, 2009

Interview started: 8:20 am
Interview completed: 10:40 am

Senior investigator of the 4th section of the Investigative Unit of the Main Investigation Department of the Moscow Main Internal Affair Department O.P. Romashova, Captain of Justice, at the location within the Main Investigation Department of the Main Internal Affairs Department of Moscow – Investigation Office No.321 in compliance with Articles 189 and 190 (191) of the Criminal Procedure Code of RF, interviewed the following person as a witness in relation with the criminal case No. 346820:

1. Last Name, First Name, Patronymic: Shnaider, Alexander
2. Date of Birth: ▇▇▇▇▇ 1968
3. Place of Birth: city of Leningrad, Russian Soviet Federative Socialist Republic
4. Place of Residence and/or Registration: ▇▇▇▇▇ road, M2L 2K3, Toronto, Ontario, Canada, tel.: +1▇▇▇▇2-55-93
5. Citizenship: Citizen of Canada
6. Education: Higher Education
7. Marriage Status, Family members: Married; children: Jennifer (born on 1994), Erica (born on 1997), Rebecca (born on 2005)
8. Place of Work: Owner and Manager of "Midland Group" Canada International Corporation located at 259 YORKLAND ROAD TORONTO, ONT, Canada
9. Military Service Obligation: Not Obligated for Military Service
10. Criminal Record: verbal assurances of no previous convictions
11. Passport or other Document of Identification of the witness: Passport of Canada citizen, series BA No▇▇▇8 issued on December 18, 2007, by 07 North York; passport is valid until December 18, 2012
12. Other information about witness: _____

Witness                                    /signature/
                                                 (signature)

Other participating persons: Attorney I.O. Kopenkin, who presented the order No.23 of December 10, 2008, issued by the Branch Office No.1 of the Non-profit Organization "Moscow Corporate Bar Association".

Before starting this interview, I was explained the rights and obligations of a witness as provided for by Part 4 of Article 56 of the Criminal Procedure Code of RF:
    1) Refuse to be a witness against myself, my spouse, and other close relatives the scope of which is determined by the paragraph 4 of Article 5 of the Criminal Procedure Code of RF. If I will agree to testify, I am warned that my testimony may be used as the evidence for criminal case including in the case of my subsequent refusal from this testimony.

2) Testify on my native language or language I am proficient.
3) Use help of interpreter free of charge.
4) Request to remove an interpreter participating in the interview.
5) File requests and submit claims for actions (or failure to act) by the investigating officer conducting an initial inquiry, investigator, prosecutor or court.
6) Appear at the interview with attorney in accordance with Part 5 of Article 189 of the Criminal Procedure Code of RF.
7) File requests about taking security measures provided by the Part 3 of Article 11 of the Criminal Procedure Code of RF.

Notified about prosecution for refusal to testify in accordance with Article 308 of the Criminal Procedure Code of RF, and perjury in accordance with Article 307 of the Criminal Procedure Code of RF

Witness                                    /signature/
                                           (signature)

On the subject matter of asked questions, I can testify as follows:

I have lived in Canada together with my family since 1982. I have a complete command of the Russian language and I do not need the assistance of an interpreter. I never was registered at drug rehabilitation or psychoneurological clinics and I do not have head injuries.

I am an owner and manager of "Midland Group" Canada International Corporation business interests of which include metallurgy, development, and consulting.

I have known Eduard Slinin since 2004 however we started close communication from the end of Summer-beginning of Fall 2005. Currently we have normal and business relations.

I do not know Cyril Dubov personally, never communicated with him, however I know that he is a friend of Eduard Slinin.

I met Vitaly Kachura only once in Moscow in 2007 when he wanted to buy a watch from me.

I do not know Georgy Pirumov personally and I have never met him. However, once around the end of Spring/beginning of Summer 2008 he called me, and I had telephone conversation with him about five minutes regarding conditions of the executed contracts.

I have closely cooperated with the Bombardier company from Canada for several years. I own an airplane made by this company. I many times helped to buy airplanes from this company and I know some of managers of this company very well. Thanks to my good reputation in this company, I actually have opportunity to buy airplanes from the manufacturer for the lowest price. Regarding the issues of purchasing five indicated below airplanes for Mr. G.S. Pirumov I communicated with the employee of an international sales department of Bombardier company – Djaidd Karim Fazal who currently doesn't work at this company.

At Spring 2007 E. Slinin who was in Moscow that time called on my phone and asked me if I still work with the Canadian Bombardier company and how much an airplanes of model CL-600-2B19 variant Challenger 850 Executive from this company would cost. I told him something, but I do not remember exactly what I told him.

Later, at the end of Spring and beginning of Summer 2007 I met with Slinin in New York where I was for business. He told me that when he was in Moscow one Russian businessman

Px 22-3

who is interested in purchasing several airplanes of Bombardier company, asked to clarify all conditions of purchasing these airplanes.

I exactly remember that at that time the finished airplanes of Bombardier company marketed at price starting from 30 million US dollars. In Russia the price for airplanes of this model definitely was more than 30 million US dollars, because the most low-cost market for airplane sale always was in America, and in other countries, particularly in Europe prices for these models were different from prices in the American market.

I explained to E. Slinin all of the standard conditions based on which Bombardier company concluded contracts during that time. He asked me to find out carefully more details because as he said there is a buyer in Moscow with name Pirumov who wishes to buy several (4) airplanes of model CL-600-2B19 variant Challenger 850 Executive and if possible to help with the execution of these contracts.

After some time, I explained to Slinin that the business deal for purchasing airplanes where I have a role of intermediate party (broker) for this business transaction before the Bombardier company shall be the following: buyer purchases companies under a Cyprus or BVI jurisdiction in the quantity equal to the number of airplanes to be purchased after clarification of all contract conditions. This approach was dictated by established practice, i.e. for simplicity and the anonymization of the execution of ownership right for airplane it would be very convenient to buy airplane for a company rather than for natural person. After companies controlled by me will conclude contracts for the construction of airplanes with the Bombardier company I can execute contracts for the supply of these airplanes to buyers from Russia. However, in this case to avoid damaging the business relations with the Bombardier company I need to be completely assured that Pirumov has the money on his accounts for payment under these contracts. Slinin told me that everything will be OK because he reached a verbal agreement with Pirumov about accumulation of money at his account in Switzerland in the amount sufficient for initial payments on the contracts.

After some time, approximately in the Summer of 2007, Slinin asked me to help to purchase companies-buyers of airplanes on his own name and Pirumov's name. I gave to Slinin, the contact information of Michel Marishal, my corporate lawyer in Switzerland who among other legal issues handled issues of acquisition of companies and execution of documents for companies.

The plan of purchasing the Bombardier company airplanes to the benefit of Pirumov agreed between me and Slinin as well as between Slinin and Pirumov was as follows:
Pirumov with the help of Marishal acquired the right of ownership for 5 offshore companies:
Blue industrial skies inc, Stogan assets incorporated, Setius technologies ltd, Xaman holdings ltd, Jofan holding limited. As I learned later the listed companies were purchased by Pirumov and Slinin in proporation of 70/30 i.e Pirumov owned 70% of shares in these companies, and Slinin's company Jets Worldwide LLC owned 30% of shares.

Concurrently, I together with E. Slinin acquired right of ownership on two controlled companies: Challenger aircraft company ltd and CL850 Aircraft investments ltd. I would not like to disclose the shareholding proportions in these companies because it is a commercial secret according to American and Canadian laws. My trusted person Robert Lee was appointed as a director of these companies.

At the end of Fall 2007 Slinin informed me that in addition to airplanes of model Challenger 850 Executive, Pirumov wants to buy another airplane, the Bombardier Global Express XRS.

At the end of Fall and beginning of Winter 2007 (I do not remember the date exactly) Slinin informed me that funds sufficient for first contract payments for purchasing four Challenger 850

Px 22-4

Executive airplanes and one Bombardier Global Express XRS airplane had already been accumulated at the account of his company, and the execution of the transaction could be started. By that time the five contracts between Challenger aircraft company ltd and CL850 Aircraft investments ltd, the companies controlled by me, and the Bombardier company were already concluded. From Slinin words, his lawyers, Pirumov's lawyers and Marishal's laywers were supposed to finalize the execution of ownership rights of Pirumov and Slinin for the above mentioned offshores approximately by Christmas i.e. by December 25, 2007. I instructed my lawyers to prepare contracts between the Challenger aircraft company ltd and CL850 Aircraft investments ltd and Slinin's/Pirumov's companies – Blue industrial skies inc, Stogan assets incorporated, Setius technologies ltd, Xaman holdings ltd, Jofan holding limited. As far as I know the lawyers by the Christmas 2007 prepared texts of contracts and sent them to Slinin for agreement.

Robert Lee reported to me that following Slinin's request he sent texts of five contracts by e-mail on Slinin's address and Slinin called him on Christmas eve from Paris and told him that Russian businessman Pirumov signed these contracts from his side, and two copies of each contract (total 10 copies) signed by Pirumov were sent by express mail to Canada. Later, R.Lee signed the specified contacts from his side and sent them (in my opinion) to Slinin's address and because a considerable amount of time elapsed since that time, I can not be more accurate.

Money sufficient for the first payments under five contracts i.e. in the amount about 10.5 million US dollars were transferred from the Slinin's account to the payment accounts of the Bombardier company, and I with Slinin received the remaining balance as a profit, as a result of our participation in these transactions. I do not wish to provide explanation of how I used the money received as a profit.

From Silin's words, starting from Spring 2008, during his conversations with Pirumov, Pirumov often raised issue that Russian banks were no giving credits to Pirumov for further payments under contracts because contracts are not concluded directly with the manufacturer (Bombardier), and instead this they were concluded with companies. Pirumov had no other investors and didn't have his own money for making further payments. These circumstances possibly triggered uproar between Pirumov with Slinin. Pirumov required from Slinin the execution of assignment i.e. cession of rights for contracts concluded between Bombardier company and Challenger aircraft company ltd and CL850 Aircraft investments ltd to the benefit of Pirumov's companies. This required certain agreements with Bombardier company because considering an established practice Bombardier company made such cessions only in respect of interdependent companies. Accepting urgent requests from Slinin, I agreed to assist with conclusion of the three-party agreement between Bombardier, Challenger aircraft company ltd and Xaman Holdings ltd. It happened in the following manner:

In my opinion, in August 2008, the three-party agreement regarding the assignment of rights, interests, obligations and responsibilities resulted from purchase/sale agreement for airplane between Bombardier Inc and Challenger aircraft company ltd with replacement of party of the agreement (namely rights and obligations for this agreement were acquired by Xaman Holdings ltd in lieu of Challenger aircraft company ltd), was signed. Therefore, the company controlled by Pirumov purchased one airplane CL-600-2B19 variant Challenger 850 Executive from manufacturer for the price specified in the purchase/sale agreement between Bombardier Inc and Challenger aircraft company ltd – i.e. for 24,550,000 US dollars instead of original cost of the airplane in the amount of 26,550,000 US dollars, and by doing so I received from Slinin a funds-commission fee originally planned as a profit in this specific project (contract). I do not have financial claims to any party regarding Xaman Holdings Ltd.

On August 18, 2008, as Pirumov insisted, the settlement agreement was concluded between Challenger aircraft company ltd represented by Robert Lee and Xaman Holdings Ltd represented by G.Pirumov. The essence of the agreement was that the purchase/sale agreement of airplane concluded between Challenger aircraft company ltd and Xaman Holdings Ltd is terminated without any claims from both sides, and concurrently Challenger aircraft company ltd re-executes its rights under the purchase/sale agreement for airplane C850-0172 concluded by Bombardier Inc for Xaman Holdings Ltd.

Therefore, on August 18, 2008, the Xaman Holdings Ltd. owned by Pirumov, acquired all rights for one of airplanes CL-600-2B19 variant Challenger 850 Executive subject to execution of all assumed obligations of making the second and third payments under purchase/sale agreement for airplane respectively in the amount of 17,000,000 US dollars and 5,550,000 US dollars

As far as I know, on July 3, 2008, as Pirumov insisted, the settlement agreement between the Challenger aircraft company ltd represented by Robert Lee and Blue industrial skies inc represented by Vadim Zilberman was concluded. The essence of this agreement was that the airplane purchase/sale agreement concluded between Challenger aircraft company ltd and Blue industrial skies inc shall be terminated without any claims from both sides, and concurrently Challenger aircraft company ltd starts re-execution of its rights under the purchase/sale agreement of airplane CL-600-2B19 variant Challenger 850 Executive with the airplane manufacturing company to the benefit of Blue industrial skies inc. The specified actions were similar to the above described situation with the purpose of transferring rights and obligations under the airplane purchase/sale agreement between Bombardier Inc and Challenger aircraft company ltd for the second aircraft CL-600-2B19 variant Challenger 850 Executive directly to Blue industrial skies inc, company owned by Pirumov:.

In the course of these operations, Pirumov advised Slinin not to transfer the rights and obligations to the Challenger aircraft company ltd under the purchase/sale agreement and buy out from him (Pirumov) the ownership right for Blue industrial skies inc. Slinin did this. So, Eduard Slinin obtained all rights and obligations of Blue industrial skies inc to Challenger aircraft company ltd and, therefore, he acquired the rights for airplane which was in the process of construction at the Bombardier Inc. factory, and paid to Pirumov several million US dollars. However, I do not know exactly all the circumstances and conditions of purchase by Slinin (more specifically, by his company Jets Worldwide LLC) of 100% shares of the company Blue industrial skies inc. I have not received the commission fee to be paid by Slinin yet, the same as in the case of Xaman Holdings Ltd, but he promised me to pay this money after sale of this airplane.

Therefore, I have not deceived Mr. G.S. Pirumov and I have not misled him concerning the purchase of these airplanes; all five contracts concluded with companies of S.G. Pirumov were legitimate; and in the case of the fulfillment of obligations under contracts before Bombardier, G.S. Pirumov will receive three airplanes because one airplane (Blue industrial skies inc) he sold to Slinin, and Xaman Holdings Ltd has direct contract with Bombardier company.

Question to A. Shnaider: Explain why the rights for remaining airplanes were not transferred to G.S. Pirumov's companies - Stogan assets incorporated, Jofan Holding Limited, Setius Technologies Ltd?

Answer of A.Shnaider: G.S. Pirumov was offered to make prepayment of money balance which was originally considered a profit of the Challenger aircraft company and CL850 Aircraft Investments Ltd. In such case these companies would sign all assignment of rights for airplanes. Because G.S. Pirumov refused to follow the offered conditions, then as of today he shall make payments according to schedules indicated in the contracts with his companies Stogan assets incorporated, Jofan Holding Limited, Setius Technologies Ltd.

Px 22-6

Witness /signature/

Before starting, in the process or upon finishing the witness interview, on behalf of participating persons of the witness A.O. Shnaider, attorney I.O. Kopenkina, the applications:
*were not filed*                                  Content of application: _____
(filed, not filed)

Witness                                                              /signature/
                                                                 (signature)

Other participating persons:                    /signature/
                                                                  (signature)

                                                                 (signature)

The Record was read      *Read out*
Comments to Record       *N/A*

Witness                                                              /signature/
                                                                 (signature)

Other participating persons:                    /signature/
                                                                  (signature)

Investigator                                                      /signature/
                                                                 (signature)

Official Seal

VISA                  20 7970877
RUSSIAN FEDERATION
MULTIPLE-ENTRY VISA "M" OD

| | | |
|---|---|---|
| Date of Issue<br>02.04.09 | Entry from/staying until<br>02.05.09/12.04.09 | Duration of stay/days<br>90 |
| Nationality<br>CANADA | | VISA ID<br>TTO46641 |

Surname, Given Names
SHNAIDER, ALEXANDER

| | | | |
|---|---|---|---|
| Passport No.<br>▓▓▓▓ | Date of Birth<br>▓▓▓ 1968 | Sex<br>Male | Invitation No.<br>2Y9899873 |

Purpose of Entry
BUSINESS, 003

Invited by
BINAT LLC, MOSCOW

Additional Information
VALID DURING 90 DAYS FROM EACH 180 DAYS

Px 22-8

Px 22-8